HERBERT HUBSCHMAN, complainant-appellant,

*v.*

ALICE HUBSCHMAN, defendant-respondent.

[Argued October 21st, 1946.   Decided June 27th, 1947.]

*Messrs. Siegler & Siegler* (*Mr. John J. Francis,* of counsel), for the complainant-appellant.

*Messrs. Rossbach & Rossbach* (*Mr. Adam J. Rossbach,* of counsel), for the defendant-respondent.

The opinion of the court was delivered by

WELLS, J.

This case presents the ever difficult problem of interstate divorce.   It all arises from the wife's going to Florida and there securing a divorce.   The husband fought the battle on all fronts, being particularly active in our New Jersey courts. One basic issue stands forth; namely, is the Florida divorce entitled to "full faith and credit" in our New Jersey courts?

The following facts constitute the background against which this question must be answered.

After ten years and eight months of married life, the wife left, with or without her husband's consent and knowledge, for Florida with the only child of the marriage, of the age of five years. What started out as a vacation, lengthened into a more prolonged stay. Being informed of his wife's intention to commence divorce proceedings in Florida, the husband went to Florida, ostensibly to visit his wife and child, but in reality (as subsequent events showed) to remove his child from the custody of his wife and the jurisdiction of the State of Florida. This was accomplished under the pretense of taking the child to a store to buy her a doll, and instead of returning her to the wife, as he had promised, he whisked her away to New Jersey without the knowledge or consent of the wife.

A few days thereafter the husband filed a bill in our Court of Chancery to enjoin his wife from proceeding in the Florida court. The wife filed her bill of complaint for a divorce in Florida on the ground of extreme cruelty. The husband through his New Jersey attorney engaged the services of a Florida lawyer to enter a special appearance in the Florida court for the sole purpose of contesting the jurisdiction of the Florida court. The Florida lawyer did enter such a special appearance, and in the hearing before the Florida court on the question of domicile of the wife, cross-examined the various witnesses produced by the wife. However, he produced no evidence on behalf of the husband. The Florida court found that the wife had established her domicile in Florida. Later on in the proceeding the Florida lawyer filed an answer for the husband which put in issue the merits of the case. The husband claims that such action exceeded the limited authority he had granted the Florida lawyer. This may be, but that question is immaterial in this case for reasons to be later stated. Almost a year after commencing suit, the wife received her final decree in the Florida court, and shortly thereafter returned to New Jersey for her daughter. The husband filed a new bill, asking our Court of Chancery to declare the Florida decree as null and void as a fraud upon

both states. The wife filed a petition under the husband's original bill, asking for custody of and allowance for the child. In both suits the validity of the Florida decree was put in issue. These two proceedings were subsequently consolidated and a hearing had before Advisory Master Van Winkle. In the decree, which he advised, the husband's bill to set aside the Florida decree was dismissed for reasons that: (1) the husband came into court with unclean hands; (2) the Florida decree is *res judicata,* and hence the husband is estopped from questioning its validity now; (3) the Florida decree is entitled to full faith and credit under the federal constitution in the New Jersey courts by virtue of the fact of the contest in the Florida court.

We believe that one good reason is sufficient to sustain this portion of the decree, and, without deciding the correctness of the first two reasons stated, we agree with the advisory master that the Florida decree is entitled to full faith and credit in the courts of New Jersey.

Although our legislature in *R. S. 2:50–35* has expressed a feeling of aversion to foreign divorce decrees secured by our inhabitants, this feeling must give way before the "full faith and credit" clause of our federal constitution. *Giresi* v. *Giresi (1945), 137 N. J. Eq. 336* (at *p. 340*).

Recently the Supreme Court of the United States seems to have pared down the older doctrine of "matrimonial domicile" as enunciated in *Haddock* v. *Haddock, 201 U. S. 562; Atherton* v. *Atherton, 181 U. S. 155,* to ordinary "domicile" as the cornerstone of jurisdiction upon which to base a divorce decree such as is entitled to full faith and credit under our federal constitution. See the first *Williams* v. *North Carolina Case (1941), 317 U. S. 287.*

"It was there held that a divorce granted by Nevada, on a finding that one spouse was domiciled in Nevada, must be respected in North Carolina, where Nevada's finding of domicile was not questioned, though the other spouse had neither appeared nor been served with process in Nevada, and though recognition of such a divorce offended the policy of North Carolina." *Williams* v. *North Carolina (1945), 325 U. S. 226.*

However, in this second *Williams* v. *North Carolina Case,* it was held that North Carolina had the power "to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicile was acquired in Nevada." Interesting and informative discussions are to be found in Powell's "And Repent at Leisure," *58 Harvard Law Review 930,* and Radin's "Interstate Divorce Problem," *69 N. J. L. J. 233* and *241.*

In that part of the court's opinion in the second *Williams Case,* which is most apposite to our present problem, there is pointed out a situation where this power does not exist. Speaking of this phase of the question, the Supreme Court said:

"It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contention has has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties." In a footnote to its discussion of the right of the state to vindicate its own social policy as against an unfounded recital in the record of a court of another state, the court makes this distinction: "We have not here a situation where a state disregards the adjudication of another state on the issue of domicile squarely litigated in a truly adversary proceeding."

The basis for these observations made in the second *Williams Case* is *Davis* v. *Davis (1938), 305 U. S. 32.* In the *Davis Case* the District of Columbia was required to give full faith to a decree of divorce granted by Virginia to a former resident of the District of Columbia, who had moved into Virginia and there commenced divorce proceedings, in which the other spouse had entered a special appearance, and had actually litigated the question of domicile. This case is very similar to our present case, and we regard it as controlling in our interpretation of the "full faith and credit" clause of the federal constitution. See *Herr's 1944 Supplement to Marriage, Divorce and Separation,* § *317.*

These doctrines laid down by the decisions of the United States Supreme Court have always found favor in New Jersey.

Our courts have regularly reserved the right to examine into the question of domicile and to refuse recognition to a foreign divorce decree based upon fraud in the proof of domicile. *Hollander* v. *Hollander* (*1945*), *137 N. J. Eq. 70; Mascola* v. *Mascola* (*1943*), *134 N. J. Eq. 48; Sprague* v. *Sprague* (*1942*), *131 N. J. Eq. 104; Kaufman* v. *Kaufman* (*1936*), *120 N. J. Eq. 603*. Appearance alone in the foreign proceeding by the defending spouse without actual contest on the merits or question of domicile will not preclude our examination of the question of fraud, *Giresi* v. *Giresi, supra,* particularly if there is evidence that such appearance or contest was induced or tainted by fraud. *Isserman* v. *Isserman* (*1946*), *138 N. J. Eq. 140*. But in those cases where there was an appearance, be it special or general, and the defending spouse had his or her day in the foreign court and did present his evidence or cross-examined the other's witnesses on the question of domicile, our courts have held that the defending spouse was thereafter estopped from questioning the validity of the foreign decree. *Sleeper* v. *Sleeper* (*1940*), *129 N. J. Eq. 94; Meade* v. *Mueller* (*1947*), *139 N. J. Eq. 491*.

In the instant case, an examination of the record of the Florida proceedings shows that the husband had his day in court on the question of domicile. His lawyer appeared at the hearing and cross-examined carefully all the witnesses produced by the wife. He lost. Instead of appealing to the higher courts of Florida, he turned to the courts of New Jersey and sought another day in court. Our system of jurisprudence does not grant this. It is immaterial to us whether his attorney went beyond his authority in filing a general answer, for it is conceded that he was authorized to try the question of domicile by whatever procedure the Florida court brought the same into issue.

We conclude, therefore, that that portion of the final decree as advised by the advisory master dismissing the husband's bill to set aside the Florida decree was proper.

The decree also granted the custody of the child to the wife with certain liberal rights of visitation to the husband. From our examination of the record, we agree that this disposition was to the best interest of the child.

Finally, the decree allowed a counsel fee of $1,000 to the wife's attorney. In view of the services rendered and the financial ability of the husband to pay, we find this amount to be reasonable.

We are of the opinion, therefore, that the decree below should be affirmed, for the reasons herein stated.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, COLIE, WACHENFELD, EASTWOOD, WELLS, DILL, FREUND, McLEAN, JJ. 10.

*For reversal*—HEHER, McGEEHAN, JJ. 2.