GERALDINE PEFF, BY L. WELDON LAUGHLIN, HER NEXT FRIEND, COMPLAINANT-RESPONDENT, v. PETER PEFF, SUPERIOR AIR PRODUCTS CO., A CORPORATION, AND LINDEN LANE FARM, INC., A CORPORATION, DEFEND-ANTS-APPELLANTS.

Argued May 9, 1949—Decided June 30, 1949.

514

*Mr. Blair Reiley* (*Messrs. Martin & Reiley,* attorneys) argued the cause for the defendant-appellant Peter Peff.

*Mr. William L. Dill, Jr.* (*Messrs. Stryker, Tams & Horner,* attorneys) argued the cause for the defendants-appellants Superior Air Products Co. and Linden Lane Farm, Inc.

*Mr. Robert L. Hood,* substituted next friend, *per se,* argued the cause for the complainant-respondent, Geraldine Peff.

*Mr. Joseph Steiner* argued the cause for the respondent and cross-appellant, James F. X. O'Brien.

The opinion of the court was delivered by

ACKERSON, J. This matter comes before us on appeals from a decree of the former Court of Chancery entered in a suit instituted by Geraldine Peff, a mental incompetent appearing by next friend, to have a Nevada divorce, obtained by the defendant, Peter Peff, dissolving their marriage, declared void and of no effect in this State, and to obtain suitable maintenance for herself, to establish her right to inchoate dower in certain real property conveyed by Peter Peff to the defendants Superior Air Products Co. and Linden Lane Farm, Inc. (hereinafter referred to as Superior and Linden, respectively), and to establish that certain personal property is held in trust for the defendant Peter Peff by said companies.

This suit culminated in the decree herein appealed from which declared the Nevada divorce invalid, and granted the other relief hereinabove mentioned, including maintenance at the rate of $275 monthly, and awarded to Robert Hood, substituted next friend of the complainant, $10,000 for compensation; to James F. X. O'Brien, her solicitor, a fee of $5,000, and to Leon W. Kapp, as sequestrator appointed by the court in her behalf, the sum of $1,000, together with disbursements in each instance.

The defendants have severally appealed from the aforesaid decree, and complainant's solicitor, James F. X. O'Brien, has appealed from his aforesaid allowance as inadequate.

The Peffs were married in 1931 in New York City. Thereafter they lived in various places in New Jersey, except for intermittent visits by the wife to her parents in Iowa between 1937 and 1939. In 1935 twin daughters were born of the marriage. The defendant, Peter Peff, had been, and still is, engaged in the production of commercial gases and in designing plants for such production. In the latter part of 1937, Geraldine Peff showed symptoms of mental aberration; the final diagnosis was dementia praecox of the paranoid type. Her condition was then such that her physician advised confinement, and upon the affidavit of two physicians she was committed to the Essex County Hospital at Overbrook, apparently pursuant to R. S. 30:4-23 et seq. After a short

time she was released and visited her parents in Iowa. In the summer of 1938 the children went to visit their mother in the west. The mother and children returned to New Jersey again in the late summer. In the fall of 1939, her condition became worse, requiring private hospitalization, but after a time she insisted on returning to her parents' home in Iowa. This was in December, 1939, and she has never returned to New Jersey. She was hospitalized at intervals in Iowa, and there she was adjudged a lunatic on May 25, 1943, and committed to the Clarinda State Hospital for the Insane in that state.

Prior thereto, in 1941, this defendant purchased a country estate, known as Linden Lane Farm, at Eatontown, New Jersey, and moved his children and household there in the hope that his wife would recuperate and be able to join them. However he was later told by a physician that her condition was incurable. Having thus been informed of her incurability, Peff testified that he concluded a divorce was essential for the well-being of the family, particularly the children. He consulted counsel who advised him that insanity was not a ground for divorce in this State. He then concluded to establish a residence in New York City for the purpose of suing for divorce. He moved there in July of 1942, renting an apartment and leasing an office and laboratory for his business in that city.

However, in April, 1943, his wife, appearing by her father as next friend, obtained from our Court of Chancery an order restraining the defendant, Peff, from instituting or prosecuting, elsewhere than in New Jersey, any suit affecting the marital status, pending final hearing and until further order of the court. *Vide, Peff v. Peff*, 134 *N. J. Eq.* 506 (*E. & A.* 1943). On May 27, 1944, by consent of all parties concerned, a decree was entered dismissing the bill of complaint in the last mentioned cause after a general memorandum agreement of settlement had been arranged for on May 24, 1944, whereby her husband was to pay complainant $275 monthly for her support, secured by a $50,000 trust fund, which, after her death, was to be payable to the children *per*

*stirpes,* complainant to release any rights in her husband's property and permit him to sue for divorce in New York. Matters of detail were left for later co-operative action, but after the dismissal of the aforesaid complaint the agreement was never fully consummated for one reason or another, and no suit for divorce was ever brought in New York.

Thereafter in the spring of 1945 Peter Peff arranged for the termination of the leases of his apartment and laboratory in New York, turned over to others the management of the eastern business of Superior, in which he was heavily interested, and on April 13, 1945, moved to Reno, Nevada, where he purchased a home, and where he was joined at the end of the school year by his children and their governess.

On May 26, 1945, he instituted a suit for divorce in Nevada. The record discloses that his wife did not actually appear or participate therein, although she was duly and personally served with process, in the manner provided by Nevada law and pursuant to the order of the court, in Grant City, Missouri, where she was then living with her parents. Since she did not appear the court, on the application of her husband, appointed a guardian *ad litem* for her. After hearing testimony the court, on July 28, 1945, granted a decree of absolute divorce on the ground of the wife's insanity, a statutory ground for such action in Nevada, and also specifically found the jurisdictional prerequisite of the husband's *bona fide* domicile in that state. The decree also awarded him the custody of the children and ordered him to pay the sum of $25.30 monthly, or whatever sum was required, to maintain Geraldine in the Iowa state hospital for the insane to which she had been previously committed.

The primary question presented and argued in the briefs before us is whether or not Peter Peff had acquired a *bona fide* domicile in Nevada so as to entitle the decree of divorce to "full faith and credit" in the courts of our State. The Advisory Master in the court below refused to recognize its validity, holding that it was fraudulently procured through a false simulation of domicile in Nevada on the part of Peter Peff, and also that his wife had become a ward of the former

Chancellor and her husband was therefore powerless to change his domicile from New Jersey of his own volition so as to establish a *bona fide* domicile elsewhere.

In the first *Williams v. North Caroline case,* 317 *U. S.* 287, 87 *L. Ed.* 279, 63 *S. Ct.* 207, 143 *A. L. R.* 1273 (*U. S.* 1942), it was held that a divorce decree must be given extraterritorial recognition under the "full faith and credit" clause of the Federal Constitution, if obtained in accordance with the requirements of procedural due process in the divorce forum, notwithstanding that the other spouse was constructively served with process in another state and does not appear in the action; and this is true even though the ground of the divorce so obtained is not recognized as a ground for such action in the latter state. So our local policy as expressed in *R. S.* 2:50–35, which denies validity to divorces secured by our citizens who go to another jurisdiction to obtain a decree of divorce for a cause not recognized as a ground therefor in New Jersey, must give way before the "full faith and credit" clause of our Federal Constitution. *Hubschman v. Hubschman,* 140 *N. J. Eq.* 284, 286 (*E. & A.* 1946) ; *Giresi v. Giresi,* 137 *Id.* 336, 340 (*E. & A.* 1945).

Then came the second *Williams v. North Carolina case,* 325 *U. S.* 226, 89 *L. Ed.* 1577, 65 *S. Ct.* 1092, 157 *A. L. R.* 1366 (*U. S.* 1944), which held that "the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicile is a jurisdictional fact." *Giresi v. Giresi, supra, p.* 341. Therefore the "full faith and credit" clause does not protect a divorce decree, which is not based upon the *bona fide* domicile of one of the spouses, when such decree is later attacked in another state where the other spouse has remained, unless, under recent decisions of the federal courts, the latter has appeared and actually participated in the divorce proceedings and had an opportunity to raise the jurisdictional question. *Sherrer v. Sherrer,* 334 *U. S.* 343, 92 *L. Ed.* 1429, 68 *S. Ct.* 1087, 1 *A. L. R.* 2d 1355 (*U. S.* 1948) ; *Coe v. Coe,* 334 *U. S.* 378, 92 *L. Ed.* 1451, 68 *S. Ct.* 1094, 1 *A. L. R.* 2d 1376 (*U. S.* 1948).

We will proceed therefore to consider whether the Nevada divorce is properly founded upon the jurisdictional prerequisite of *bona fide* domicile.

A man has the right to choose his own domicile, and his motive in so doing is immaterial. *Wallace v. Wallace,* 65 *N. J. Eq.* 359, 364 (*E. & A.* 1903). *Vide, Harral v. Harral,* 39 *Id.* 279, 285 (*E. & A.* 1884); *In re Dorrance,* 115 *Id.* 268, 275 (*Prerog. Ct.* 1934); affirmed, 116 *N. J. L.* 362 (*E. & A.* 1936); *certiorari* denied, 298 *U. S.* 678 (*U. S.* 1936).

A person may legitimately move to another state in order to avail himself of its laws, including its divorce laws, the only requirements being absolute good faith in the taking up of such residence and of the intention of remaining there— the *animus manendi.* The avowal that the object in moving to the other jurisdiction is for that purpose is only an element to be considered in determining the *bona fides* of residence— *Wallace v. Wallace, supra.*

In order to effect a change of domicile, as contemplated by the law of divorce, to confer jurisdiction upon a state to dissolve a marriage wheresoever contracted, there must exist on the part of the divorce seeking spouse, an intention upon his part to live at the divorce forum permanently or indefinitely. *Williams v. North Carolina* (second case), 325 *U. S.* 226, *supra.* The *animus manendi, i. e.,* the intention of remaining indefinitely in the new residence, and the intention not to return to the old, *i. e.,* the *animus non revertendi,* are essential elements of domicile. *Vide, Sprague v. Sprague,* 131 *N. J. Eq.* 104, 107 (*E. & A.* 1941); *Hollander v. Hollander,* 137 *Id.* 70, 77 (*E. & A.* 1945); *In re Dorrance, supra,* p. 274; *Cox v. Cox,* 137 *Id.* 241 (*E. & A.* 1945); *Harral v. Harral, supra,* p. 285; 17 *Am. Jur. (Divorce and Separation),* § 250, p. 279. Note, 159 *A. L. R.* 496, 499; Note, 1 *A. L. R.* 2d 1386, 1389. See, also, *Gilbert v. David,* 235 *U. S.* 561, 35 *S. Ct.* 164, 59 *L. Ed.* 360, 364 (*U. S.* 1914); *Kurilla v. Roth,* 132 *N. J. L.* 213, 216 (*Sup. Ct.* 1944).

In *Harral v. Harral, supra,* it was said: "There must be a voluntary change of residence; the residence at the place

chosen for the domicile must be actual; to the *factum* of residence must be added the *animus manendi;* and that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a temporary or special purpose, but with the present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home."

The findings of fact by the Nevada court, as they appear in the record before us, show that it found to its satisfaction from the testimony produced, that Peter Peff had established a *bona fide* residence and was domiciled in Nevada for the period required to give it jurisdiction, and that he went to Reno, Nevada, on April 13, 1945, with the intention of making that city his permanent home and residence. The court then commented on specific acts which prompted it to determine the *bona fideness* and permanence of such residence.

As already observed, the power to grant a divorce—jurisdiction, strictly speaking—rests upon domicile, and the full faith and credit clause requires that *prima facie* validity be accorded to the divorce decrees of a sister state. *Esenwein v. Pennsylvania,* 325 *U. S.* 279, 89 *L. Ed.* 1608, 65 *S. Ct.* 1118, 157 *A. L. R.* 1396 (*U. S.* 1944); *Giresi v. Giresi, supra; Note,* 1 *A. L. R.* 2d 1394. While the presumption of the jurisdictional prerequisite of domicile is rebuttable, the burden of proof rests upon the party attacking the decree, *Williams v. North Carolina* (second case), 325 *U. S.* 226, *supra; Giresi v. Giresi, supra, p.* 340.

Applying the foregoing principles to the case *sub judice,* the record leads us to the inescapable conclusion that the defendant, Peter Peff, established a *bona fide* and legal domicile in Nevada. Before moving there, in addition to the facts hereinbefore stated concerning the closing of his personal connections in the east, he purchased a $20,000 home in Reno, had the furnishings from his former New York residence sent out there, and on April 13, 1945, moved into his new home and at the end of the school year in June brought his children there to live with him. An office was leased by him for Superior Air Products Co., and he dealt primarily with its

western customers, greatly increasing its business there. He and another resident of Reno organized a Nevada corporation, the Sierra Oxygen Company, which he has operated very successfully and which involves considerable capital. He purchased a site near Reno and at his expense erected a $20,000 building thereon which he leased to the Sierra Company. He also built thereon a separate laboratory and office building for use in his work with that company. When he remarried in November, 1945—his second wife having been the governess of his children—they moved to a larger home in Reno which he had purchased for $50,000. At the time of the decree appealed from (September 14, 1948) Peter Peff had not lived or slept in the State of New Jersey for over six years. There is no indication in the record that he intends to return either to New Jersey or New York to live, or to take up residence elsewhere than Nevada.

We pause at this point to consider the novel theory advanced by the court below and now urged by the complainant here, that she became a ward of the former Chancellor upon her commitment to the Essex County Hospital at Overbrook, on October 24, 1937, pursuant to *R. S.* 30:4-23 *et seq.,* and thereafter her husband was powerless to voluntarily change his domicile for the purpose of obtaining a divorce. We find no merit in this contention. In the first place the Chancellor was not concerned in such commitment as in the case of a proceeding instituted by a writ of *de lunatico inquirendo* under *R. S.* 3:7-35. *Cf. In re Oswald, 132 N. J. Eq.* 325 *(Ch.* 1942). In the second place Mrs. Peff was released from the hospital on December 5, 1937—less than two months after her admission—and was never recommitted there. Lastly the husband, as we have already seen, was free to choose his own domicile and his motive for so doing is immaterial. The Nevada Court was concerned only with the husband's domicile, not with that of the wife.

Nor do we find any merit in the further contention, now advanced by the complainant, that the restraint preventing her husband from proceeding for divorce elsewhere than in New Jersey, was not effectively lifted by the consent order

dismissing the 1943 Chancery suit out of which the restraint arose, because she was a ward of the trial court, and such dismissal was ineffective without full disclosure to and approval by the court. Suffice it to say that this particular point was not raised and considered below and consequently it may not be considered here. *Breheny v. Essex County,* 134 *N. J. L.* 129 (*E. & A.* 1945). Furthermore it appears in the record that the dismissal order was advised over the signature of the Advisory Master, and signed by the Chancellor, and there has been no move to vacate it.

We conclude that the complainant has failed to sustain the burden of proving that the Nevada decree is invalid because of fraud in the jurisdictional prerequisite of a *bona fide* domicile by Peter Peff in that state, and, therefore, the decree must be afforded full faith and credit here. *Cf. Cope v. Cope,* 123 *N. J. Eq.* 190 (*E. & A.* 1937).

We come now to the second question presented by these appeals. The decree below adjudged that certain real property which Peter Peff had transferred to Superior and Linden was held in trust for him by said companies, and an inchoate right of dower was therefore impressed thereon in favor of complainant. It is from this part of the decree that appeals have been taken by the aforesaid defendant companies. It is the accepted rule that a valid divorce from the bonds of matrimony, for the fault of either party, will bar dower rights, whether such divorce is procured in the local court or the court of a foreign jurisdiction, unless its effect in this regard is restrained by statute, and there is no such statutory restraint in this state. *Block v. P. & G. Realty Co.,* 96 *N. J. Eq.* 159, 160 (*Ch.* 1924); *Am. Legion of Honor v. Smith,* 45 *Id.* 466, 469, 471 (*Ch.* 1889); *Pullen v. Pullen,* 52 *Id.* 9, 11 (*Ch.* 1893); *Meade v. Mueller,* 139 *Id.* 491, 496 (*Ch.* 1947); *Note,* 168 *A. L. R.* 794. Since we find the Nevada divorce valid, it follows that it terminated any inchoate right of dower which the complainant might otherwise have had in the property in question.

This brings us to the question of whether or not the complainant is entitled to have an award of separate maintenance

notwithstanding the validity of the prior Nevada divorce. We conclude that she is not.

 The jurisdiction of our courts to award maintenance is statutory, *Venere v. Venere,* 137 *N. J. Eq.* 526, 528 (*E. & A.* 1945); *Richman v. Richman,* 129 *Id.* 114, 115 (*E. & A.* 1940). The statute, now *R. S.* 2:50–39, as amended, *P. L.* 1948, *c.* 320, *p.* 1292, § 27, provides:

"If a husband, without justifiable cause, shall abandon his wife or separate himself from her * * *, the court may order suitable support and maintenace to be paid * * * by the husband for the wife" etc.

Obviously this statute is applicable only where the relationship of husband and wife exists, and a decree of absolute divorce dissolves such relationship and thereby terminates the wife's right to thereafter sue for separate maintenance and support. *Magowan v. Magowan,* 57 *N. J. Eq.* 195, 198 (*Ch.* 1898); *Field v. Field,* 103 *Id.* 174 (*Ch.* 1928). In the latter case the court said: "Complainant's right to support from defendant is wholly based upon her claim that she is his wife at this time, and by the terms of our statute that relationship between the parties is made the foundation of a bill of this nature." *Vide, Cohen v. Cohen,* 318 *Mass.* 782, 64 *N. E.* 2d 689, 691 (*Sup. Jud. Ct. of Mass.* 1946); 17 *Am. Jur.* (*Divorce and Separation*), § 715, *p.* 541; 26 *Am. Jur.* (*Husband and Wife*), § 340, *p.* 939; 42 *C. J. S.* (*Husband and Wife*), § 612(a), *p.* 207. The recent federal cases of *Estin v. Estin,* 334 *U. S.* 541, 92 *L. Ed.* 1561, 68 *S. Ct.* 1213, 1 *A. L. R.* 2d 1412 (*U. S.* 1948), and *Kreiger v. Kreiger,* 334 *U. S.* 555, 92 *L. Ed.* 1572, 68 *S. Ct.* 1221 (*U. S.* 1948), cited by the complainant, are clearly distinguishable from the instant case for they deal only with the effect of foreign divorce decrees (procured through constructive service of process) upon maintenance orders previously obtained in the local forum, and have no bearing upon applications for maintenance made after the granting of a valid foreign decree, where, as here, the local statute requires a presently existing marital status as the basis for such relief. In the instant case

the Nevada divorce antedated the present application for separate maintenance by several months, hence there is lacking, as already observed, the statutory prerequisite of a marital status upon which to base such later application, and it should have been denied.

Alternatively, the complainant asks this court, under *Rule* 1:40–10, to mold the pleadings herein so that she may have specific performance of the above mentioned memorandum agreement of May 24, 1944, made at the time of the dismissal of her Chancery suit to restrain her then husband from instituting divorce proceedings elsewhere than in New Jersey.

Suffice it to say that this memorandum was in essence and effect an agreement for alimony, as will be observed from the summarization of its terms hereinbefore stated, and therefore is not subject to specific performance in the courts of this State. *Second Nat. Bank of Paterson v. Curie,* 116 *N. J. Eq.* 101, 110 (*E. & A.* 1934); *Apfelbaum v. Apfelbaum,* 111 *Id.* 529, 530 (*E. & A.* 1932); *Lum v. Lum,* 140 *Id.* 137, 138 (*E. & A.* 1947); *Harrington v. Harrington,* 141 *Id.* 456 (*Ch.* 1948); *Krueger v. Krueger,* 142 *Id.* 681 (*E. & A.* 1948); *Friedman v. Friedman,* 142 *Id.* 685 (*E. & A.* 1948).

So far as these appeals involve the amounts of allowances and fees, we conclude that such amounts should be reduced to the following figures: to Robert L. Hood, Esq., as next friend of the complainant, $7,500, and disbursements in the sum of $400, plus costs of suit to be taxed; to James F. X. O'Brien, solicitor of complainant, $3,750 and disbursements in the sum of $600; and to Leon W. Kapp, for his services as sequestrator, $750 and the sum of $57 for disbursements.

The judgment below is reversed in all respects except as to the allowances for services, fees and disbursements, with respect to which it is modified as hereinabove stated.

*For reversal in part and modification in part*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.