6 N.J. Super. 130 (1950)
70 A.2d 502
MARILYN SHEPHERD, PLAINTIFF-APPELLANT,
v.
ALBERT J. WARD, DEFENDANT-RESPONDENT. ALBERT J. WARD, PLAINTIFF-RESPONDENT,
v.
MARILYN S. WARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1949.
Decided January 10, 1950.
*133 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. George W.C. McCarter argued the cause for appellant (Messrs. McCarter, English & Studer, attorneys).
Mr. Dougal Herr argued the cause for respondent.
The opinion of the court was delivered by COLIE, J.A.D.
The first appeal is from a judgment dismissing Marilyn Shepherd's action for alimony. The second is an appeal from a judgment of divorce awarded Albert J. Ward. The legal questions presented are best examined against the factual and chronological background.
Marilyn Shepherd and Albert J. Ward were married on September 6, 1941, and thereafter resided in Morristown where he was an active practicing physician. There are no children. For reasons presently immaterial, they separated in August, 1946. Mrs. Ward thereafter lived with her parents in Maplewood. New Jersey, until October 22, 1947, when she went to Florida. Dr. Ward continued to live in his home in Morristown. On April 14, 1948, Mrs. Ward commenced an action for divorce in Florida on the ground of extreme cruelty. Hereinafter her suit for divorce will be described as the Florida action. Dr. Ward was not served personally in the Florida action but by publication and substituted service. He did not then or subsequently appear or take any step therein. Instead he countered in May, 1948, with a suit in the former Court of Chancery whereby he sought and obtained against *134 his wife a preliminary injunction from further prosecuting the Florida action.
The Florida action resulted in a decree on June 14, 1948, divorcing the parties. Four days after the date of entry of the Florida decree, Mrs. Ward, now Marilyn Shepherd, commenced a suit for alimony against Dr. Ward in the former Court of Chancery. Dr. Ward answered the complaint in the alimony suit, setting up (1) that Mrs. Ward was incapable of acquiring a Florida domicile without his consent or without proof that he had committed a matrimonial offense under New Jersey law and (2) that the Florida divorce was obtained in disregard of the preliminary injunction.
The pleadings and other papers in the injunction suit are not before us. In lieu thereof the appendix contains a stipulation with reference thereto. That stipulation reads: "Notice of this suit was given by registered mail to her and to her Florida attorney as provided by orders made in that cause, and like notice was given both of all subsequent proceedings therein. She was brought in by publication and substituted service of process. A stay and (subsequently) an injunction were issued in the injunction suit and served on her in Florida." The papers in the injunction suit started in May, 1948, were received by Mrs. Ward. The stipulation then reads: "On September 14, 1948, an amendment by way of supplement to the bill in the injunction suit was filed, setting up the fact that Mrs. Ward had, contrary to the command of the injunction, proceeded to take a decree for divorce in the Florida court, and praying that said decree be adjudged to be of no force and effect in this state." With reference to service of the supplemental bill, the stipulation reads: "Mrs. Ward and her Florida attorney were again given notice by registered mail of the amendment, and accorded time within which to answer. All the papers required to be mailed to her and her attorney in Florida were duly mailed in accordance with the orders made in that cause and the practice of the former Court of Chancery." Mrs. Ward testified that it was not until January, 1949, that she first learned that the validity of the Florida divorce was being attacked in the injunction *135 proceeding; that the first knowledge she had to that effect came from her parents who went to Florida to visit her and from a copy of a newspaper article forwarded to her by her counsel. There is, however, in the record in the injunction suit an affidavit that copies of the supplemental bill and of the order permitting the filing of same were mailed to Howard C. Fisher, Esquire, a Florida attorney, and to Marilyn Shepherd. The affidavit recites that they were mailed on September 15, 1948, and the record contains a return receipt signed by Howard C. Fisher and another return receipt signed by Mrs. Marilyn Shepherd.
No answer was filed to the first or to the supplemental bill in the injunction suit, and it culminated on December 15, 1948, in an ex parte judgment holding the Florida decree to be void because of the absence of a bona fide domicile in Florida by Mrs. Ward. After the entry of the judgment declaring the Florida decree void, Dr. Ward filed an amended answer in the alimony action against him, setting up as a bar the judgment of December 15, 1948, declaring the Florida decree void. On September 14, 1948, the same date when the supplemental bill was filed in the injunction suit, Dr. Ward commenced an action for divorce grounded upon his wife's desertion. She filed an answer therein setting up (1) that there was no personal service upon her in Dr. Ward's divorce action and therefore the court had no jurisdiction over her, and (2) that under Article IV, Section I of the Federal Constitution her Florida decree was entitled to full faith and credit in New Jersey and that as a consequence thereof Dr. Ward and she were not husband and wife, ergo, no marriage existed for the New Jersey court to dissolve.
In the original injunction suit, Mrs. Ward was brought in by publication and substituted service of process and under Kempson v. Kempson, 61 N.J. Eq. 303 (Ch. 1901); modified, 63 Id. 783 (E. & A. 1902), the restraint against the further prosecution of the Florida action was valid. From the stipulation it is clear that service in the original injunction suit was made in accordance with the New Jersey statutes and rules of the Court of Chancery with respect to absent *136 defendants. With the filing of the supplemental bill, that is not the case. The stipulation as to service of the supplemental bill is significantly silent as to publication, and the statute applicable to service upon absent defendants, R.S. 2:29-29, requires service on an absent defendant "either personally, by the delivery of a copy thereof to him, or by publication thereof, four times in one or more newspapers printed in this state and designated in the order, during four consecutive calendar weeks, at least once in each week." It is not suggested that the supplemental bill was served personally upon the defendant and we are not at liberty to assume that there was publication as required by the statute. In the absence of personal service or publication, we are forced to the conclusion that any proceedings based upon the supplemental bill in the injunction suit are void because of the absence of procedural due process. The proceeding from the time of the filing of the supplemental bill was completely changed in that it thereafter sought an adjudication by the court in New Jersey that the Florida divorce decree was invalid. Mrs. Ward, not being brought into court by due process, was under no duty to appear and contest the suit based on the supplemental bill which culminated on December 15, 1948, in a judgment that the Florida divorce was void.
The judgments under appeal are based upon two holdings, (1) that the question of Mrs. Ward's domicile is res adjudicata by reason of the finding of the court to that effect in the injunction suit, and (2) upon a finding of fact in Dr. Ward's divorce action that the Florida residence of Mrs. Ward was not bona fide and that consequently the Florida court had no jurisdiction to enter a decree of divorce. We hold that the injunction based on the supplemental bill is void for want of procedural due process. Therefore, the decision in the injunction suit that the Florida decree was invalid cannot be sustained on that ground. There is, however, no question of the right of New Jersey to inquire into the question of whether or not a decree of divorce of a sister state is predicated upon a bona fide residence therein. Peff v. Peff, 2 N.J. 513 (1949); Lawler v. Lawler, 2 Id. 527 *137 (1949). The essential element to confer jurisdiction upon the Florida court was the domicile of Mrs. Ward in Florida. The court below found that she was domiciled in New Jersey. That finding was based, to a considerable degree, upon the testimony of Mrs. Helen Stephenson. Since the fact of a bona fide Florida domicile is the sina qua non without which the court of that state could not render a judgment that is entitled to "full faith and credit" under the Federal Constitution, we now proceed to examine the evidence on that phase. Mrs. Ward testified in the alimony suit and the New Jersey divorce action, which were tried together, that she arrived in Florida on October 22, 1947, and lived at the Alhambra Hotel in West Palm Beach for several weeks and then in an apartment on Penn Street, that she first was employed by a doctor, then by an insurance company and thereafter by a law firm in West Palm Beach from January, 1948, to the time of the hearing of her alimony action and his divorce action. In April, 1948, she rented an apartment on 31st Street Court in West Palm Beach. She desired a year's lease but her landlord would lease for six months only and consequently she had to vacate the apartment at 31st Street Court and rented an apartment on 42nd Street for one year, the lease expiring October, 1949. She explained her presence in New Jersey to be because of the litigation in which she was testifying and her desire to get certain of her belongings and send them to Florida. She testified that at the end of her vacation, she would return to her employment with Mr. Lewis, a practicing attorney in West Palm Beach. Her testimony was that she went to Florida to "make a new life down there" and to stay indefinitely. Mr. Lewis testified that when he employed her in January of 1948, he interrogated her closely with respect to whether her employment by his firm was to be permanent and satisfied himself that it was before engaging her. He drew a lease for one year for her apartment and prepared a contract of sale between a Lillian Sylvester and Madeline C. Shepherd, the mother of Mrs. Ward, for the purchase of a house in West Palm Beach. Madeline C. Shepherd and her husband testified that their *138 daughter told them that she intended to remain in Florida. Despite the undisputed testimony of Mrs. Ward, Mr. Lewis and Mrs. and Mr. Shepherd, Sr., and apparently on the basis of the testimony of Mrs. Stephenson, the Advisory Master found that Mrs. Ward lacked the animus manendi necessary to establish a Florida domicile. There is no reason to question the truthfulness of Mrs. Stephenson's testimony but there is grave doubt whether it should carry the implications and the weight given it. Mrs. Stephenson and Mrs. Ward first met as guests at a luncheon. Before luncheon they were on the beach and it was there that the conversation took place. Mrs. Stephenson's recollection of the conversation was "that she (Mrs. Ward) was down in Florida and that she was in the process of getting a divorce and that she would undoubtedly return to New Jersey after everything was cleared up." We do not agree with the court below that Mrs. Ward's "intentions * * * so far as they relate to the Florida residence, was merely to stay there long enough to procure her divorce and return to New Jersey." When it is remembered that Mrs. Ward's parents, the Shepherds, were then living in Maplewood, New Jersey, and that Mrs. Ward had personal belongings in New Jersey which she wished to take to Florida, the statement that she "would undoubtedly return to New Jersey after everything was cleared up" loses much of the force attributed to it by the court below. Accepting Mrs. Stephenson's recollection of the statement as correct, we can at most say that it is somewhat ambiguous and, standing alone, might warrant the inference that Mrs. Ward retained an animus revertendi so far as a New Jersey domicile is concerned. When, however, it is viewed against the background of a permanent employment, the contract by her parents to purchase a home in West Palm Beach and the uncontroverted testimony of Mrs. Ward, we are led to the conclusion that the aforesaid statement cannot be tortured into meaning that Mrs. Ward intended to return to New Jersey for the purpose of reestablishing her domicile there. We find that the Florida domicile was bona fide and conferred jurisdiction upon the court of that state to enter the decree of divorce.
*139 On behalf of the respondent it is argued that the Florida decree of divorce is void for lack of jurisdictional foundation. That point is disposed of by our finding of fact that the Florida domicile of Mrs. Ward was bona fide. The next point argued is that Mrs. Ward was incompetent to acquire a domicile in Florida for purposes of divorce in the absence of Dr. Ward's consent that she do so, or the fact that he was guilty of a matrimonial offense. Such was the rule as settled by a line of cases of which Heimler v. Heimler, 129 N.J. Eq. 497 (E. & A. 1941) is one of the more recent. However, the appellant argues that by virtue of the holding in Williams v. North Carolina, 317 U.S. 287, 87 L.Ed. 279 (1942), the local policy of New Jersey is no sanction for it to afford anything less than full faith and credit to the Florida decree of divorce. In Peff v. Peff, supra, it was said: "A person may legitimately move to another state in order to avail himself of its laws, including its divorce laws, the only requirements being absolute good faith in the taking up of such residence and of the intention of remaining there  the animus manendi. * * * In order to effect a change of domicile, as contemplated by the law of divorce, to confer jurisdiction upon a state to dissolve a marriage wheresoever contracted, there must exist on the part of the divorce seeking spouse, an intention upon his part to live at the divorce forum permanently or indefinitely. * * * Our local policy as expressed in R.S. 2:50-35, which denies validity to divorces secured by our citizens who go to another jurisdiction to obtain a decree of divorce for a cause not recognized as a ground therefor in New Jersey, must give way before the `full faith and credit' clause of our Federal Constitution. Hubschman v. Hubschman, 140 N.J. Eq. 284, 286 (E. & A. 1946); Giresi v. Giresi, 137 Id. 336, 340 (E. & A. 1945)." This is dispositive of the argument of Mrs. Ward's incompetence to acquire a Florida domicile.
It is said that since appellant concedes that she had no cause for divorce for extreme cruelty in New Jersey and since, in the absence of proof to the contrary, the Florida law is presumed to be the same as in New Jersey, therefore the *140 Florida decree must have been based on misrepresentation and suppression of essential facts. If the Florida decree is to be given full faith and credit, and it is, then we must accept the factual finding of the Florida court embodied in its judgment "that the defendant has been and is guilty of extreme cruelty to the plaintiff within the meaning of section 65.04 Florida Statute, 1941." To do otherwise would result in an absurdity since it would require New Jersey to recognize a sister state judgment and repudiate the fact and law upon which the judgment was grounded.
For the reasons stated, the judgment in Dr. Ward's suit for divorce is reversed without costs. The judgment dismissing the alimony action is reversed and the cause remanded for appropriate action therein with respect to the amount of alimony, if any, suit money and counsel fee. In connection with the alimony suit, we point out for the guidance of the trial court the caveat in Levy v. Levy, 17 N.J. Misc. 324 (Ch. 1939): "In dealing with cases in which complainants have secured their divorce decrees elsewhere than in New Jersey, it is to be anticipated that questions may arise which never confronted the court under the original statute. In some instances the cause of action may be barred for legal or constitutional reasons, and where there is no such bar equitable considerations may intervene to defeat the claim or to require that relief be conditioned so as to prevent inequity. The statute is not mandatory. It is within the chancellor's discretion to condition the relief or to deny the prayer in toto. The expression of the statute is that the court of chancery `may' make such order, etc. See Hatch v. Hatch, 15 N.J. Misc. 461, 464, 192 A. 241. It was the legislative intent, by enacting the amendment, to empower this court to see to it so far as possible that New Jersey shall no longer be a haven for ex-husbands who immigrate to this state in order to avoid their alimony obligations, finding here a substantially complete refuge." Approved in Conwell v. Conwell, 3 N.J. 266 (1949).
No counsel fee will be allowed on this appeal.