Dennis J. KILLIAN

v.

CITY OF PHILADELPHIA et al.

Civ. A. No. 73-1043.

United States District Court,
E. D. Pennsylvania.

June 21, 1974.

Dennis J. Anthony Killian, pro se.

Martin Weinberg, City Solicitor, Murray C. Goldman, Stephen Saltz, Asst. City Solicitors, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

BRODERICK, District Judge.

This is an action in which the plaintiff, a *pro se* litigant, seeks injunctive relief under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 1994, against the Philadelphia Police Department, Police Commissioner O'Neill, eight of its police officers, First Deputy City Solicitor John M. McNally, Jr., and Assistant City Solicitor Stephen Saltz. The plaintiff alleges that these defendants have violated and are continuing to violate his civil rights by preventing him from being with his wife. The matter was heard by this Court on June 10, 1974, the trial on the merits having been advanced and consolidated with the hearing for a preliminary injunction pursuant to Rule 65(a)(2) F.R. Civ.P.

The plaintiff filed his original complaint on May 9, 1973, naming only the Philadelphia Police Department as defendant. On June 14, 1973, the plaintiff amended his complaint to include the individual defendants. The City, on June 15, 1973, filed a motion to dismiss. On August 2, 1973, the plaintiff filed a "Motion for Judgment by Default

and/or Declaration: or a Temporary Restraining Order against the Philadelphia Police Department." On September 7, 1973, Judge Masterson, to whom this case was originally assigned, held a hearing on the Motion to Dismiss and on the plaintiff's motion for judgment for default or temporary restraining order. By Order dated October 23, 1973, Judge Masterson denied the motion of the Philadelphia Police Department to dismiss but granted leave to file a new motion with respect to plaintiff's amended complaint. After the resignation from the bench of Judge Masterson, the case was transferred to this Judge.

The plaintiff, who served as his own counsel in this matter, testified that he is presently a Deacon in the Holy Grace Non-Sectarian Church. He seeks to have this Court enjoin the Philadelphia Police Department, its Commissioner, eight of its policemen, the First Deputy City Solicitor and an Assistant City Solicitor from continuing what the plaintiff alleges is a conspiracy to deny him his "marital rights" as a husband and man and requests this Court to order the defendants to desist from interfering with his attempts to see and be with his wife. He also requests this Court to declare null and void the Pennsylvania divorce decree obtained by his wife.

The plaintiff testified concerning several instances which he offers as evidence of the alleged interference with his "marital rights" by the defendants. He testified that on one occasion after he and his wife were separated he drove to Jeanes Hospital, where his wife was then working, in an attempt to effect reconciliation with her. Upon his arrival at the hospital, he seated himself in his wife's car. The police were called, and they ordered him out of his wife's car, permitting her to drive away. He testified concerning another incident when he went to his mother-in-law's house to see his wife. The police were called and he was prevented from seeing her. He also testified concerning a third incident on June 3, 1972, when police came and removed him from outside his wife's apartment house. Lastly, the plaintiff described an incident where two police detectives visited him at his place of employment and interrogated him. This interrogation he claimed was the result of his having appealed the divorce decree granted his wife.

The evidence presented by the plaintiff shows that on July 18, 1973, a divorce decree was granted to the plaintiff's wife, Loretta Mansfield Killian, by the Court of Common Pleas of Philadelphia County, that plaintiff appealed the decree granting the divorce to the Superior Court of Pennsylvania, which on November 8, 1973 affirmed the decree of divorce, and on May 20, 1974 the Supreme Court of Pennsylvania denied the plaintiff's petition for Allowance of Appeal from the affirmance by the Superior Court. The plaintiff testified that his wife has since remarried.

The defendants called to the stand Patrolman Ronald Ditchie, who testified that on the evening of June 3, 1972 he and his partner received a radio call directing them to the plaintiff's wife's apartment. When they arrived the plaintiff's wife told the police that it was she who had called and that she wanted the plaintiff removed from the area. The officers spoke to the plaintiff for approximately one-half hour in an effort to persuade him to leave, but he refused. The officer testified that the plaintiff was incoherent, glassy-eyed and smelled of alcohol and that he believed that the plaintiff was intoxicated. The officers then took the plaintiff to the Second Precinct Station House, where he was placed in a cell overnight. The police officer testified that plaintiff had two sets of handcuffs in his possession and that the plaintiff's wife told him that she was afraid of her husband who had been harassing her since the separation. The plaintiff in rebuttal denied that he was intoxicated and stated that he went to his wife's apartment to determine whether his wife was committing adultery

and he brought along the two sets of handcuffs in the event it became necessary to restrain the adulterers.

Regarding the incident in which two police detectives visited and interrogated the plaintiff at his place of employment, it was brought out by the defense that the plaintiff had applied for a gun permit and the two police detectives went to see him concerning his application for a permit to carry a gun.

The two issues presented for determination in this matter are: (1) is there any basis for this Court to enjoin the Philadelphia Police Department, its Commissioner, eight of its police officers, the First Deputy City Solicitor and an Assistant City Solicitor from taking any action which would in any manner interfere with the plaintiff's alleged "marital right" to be with the woman he married?; (2) is there any basis upon which this Court should set aside the divorce decree granted by the Court of Common Pleas of Philadelphia County?

■■ As to the first issue the record shows that the plaintiff's wife divorced him and has since remarried. Although there is no credible evidence in this case which would lead the Court to conclude that there was any unconstitutional interference by the defendants with the plaintiff, injunctive relief is denied on the ground that the issue is now clearly moot. At this juncture, no conceivable action by the Philadelphia Police and the individual defendants can be construed as even possibly interfering with a marriage which has been dissolved by a decree of our State court. Furthermore, the plaintiff has not shown that he was deprived of any of his constitutional rights or that there was any interference with one or more of his constitutional rights. This record is likewise devoid of any evidence which could in any manner be interpreted as a threat that his constitutional rights might be violated in the future. The plaintiff, therefore, is *not* entitled to any injunctive or other relief in connection with this matter.

■ We will now consider the plaintiff's request that this Court void the divorce decree granted and affirmed by the state court. The plaintiff stated that he wanted this Court to "void" the divorce decree granted his wife by the Court of Common Pleas of Philadelphia County. This Court has no jurisdiction to sit as an appellate court in review of state court decisions. Any error in state court proceedings must be corrected by the appellate courts of the state and ultimately, where grounds exist, by the United States Supreme Court. Atlantic Coast Lines R. R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Wood v. Conneaut Lake Park, Inc., 386 F.2d 121 (3d Cir. 1967). This being a *pro se* action, however, and the plaintiff a non-lawyer having represented himself, we interpret his complaint as also requesting this Court to enjoin the Order of the state court granting a divorce to his wife.

■ We are mindful that the federal anti-injunction statute, 28 U.S.C. § 2283, absolutely prohibits a federal court from staying a state court proceeding unless the matter falls within one of the three prescribed statutory exceptions. The Supreme Court of the United States in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), has held that § 1983 is an "expressly authorized" exception to the anti-injunction statute; thus, where a plaintiff has alleged a claim under § 1983, a federal court is not prohibited by the anti-injunction statute from sitting as a court of equity to consider matters alleged in the plaintiff's complaint. However, the principles of equity, comity and federalism must nevertheless be applied whenever a federal court is asked to enjoin any order of a state court. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Lynch v. Snepp, 472 F.2d 769 (4th Cir. 1973); D'Amico v. Hirsch, Civil Action No. 72–1963 (E.D.Pa. filed Feb. 28, 1973). The principles of equity, comity and federalism announced in

Younger v. Harris, *supra*, as being applicable to state court criminal prosecutions are equally applicable to state civil proceedings. Lynch v. Snepp, *supra*.

■ Our own Circuit Court in Conover v. Montemuro, 477 F.2d 1073 (3d Cir. 1973) has provided us with comprehensive interpretations of the special precautions which the federal courts have developed as a self-imposed limitation upon their power to enjoin state court orders. It is now the national policy of the federal courts to refrain from interfering with state court proceedings except in the exceptional cases where it becomes necessary to protect a plaintiff's constitutional rights. In determining whether it is necessary for the federal court to exercise its equitable power to protect a plaintiff's constitutional rights by enjoining a state court proceeding, the federal court must determine whether the plaintiff has an adequate remedy at law and whether he will suffer irreparable injury which is both great and immediate if the federal court fails to act.

■ It is the plaintiff's contention in this case that his constitutional rights are being violated in that no court has the power to grant a divorce. The plaintiff argues that he has a "God-given" right to be with his wife and to live with her as husband and wife, because of the Biblical proscription "What God has joined together let no man put assunder." The plaintiff contends that a divorce decree is a violation of his "marital rights" and that his "marital rights" are protected by the U. S. Constitution and the Ten Commandments.

As we have stated above, a federal court will refrain from interfering with state court proceedings except in the exceptional situation where it is necessary to protect constitutional rights. This means, of course, that there must be a constitutional right which is in need of protection. We have read the pleadings, and we have heard the evidence, and we are at a loss to determine which, if any, of the plaintiff's constitutional rights have been violated by the power of the state to grant a decree in divorce.

It is within the exclusive jurisdiction of our sovereign states to regulate and control marriage and divorce. See Cleveland v. United States, 146 F.2d 730 (10th Cir. 1945). Concerning the power of our state legislatures to regulate marriage and divorce, the Supreme Court of the United States in Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888) said:

> Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subjct to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution.

Chief Justice Marshall in the Dartmouth College Case, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819), in discussing the United States Constitution, stated:

> It [the Constitution] never has been understood to restrict the general right of the legislature to legislate on the subject of divorces.

Accordingly, the granting of a divorce decree by a state pursuant to its duly enacted divorce laws does not in and of itself constitute a violation of the United States Constitution.

We are, of course, aware that there are cases in which both federal and state courts have held that particular procedures and provisions of state divorce laws have violated the equal protection clause, the due process clause and other clauses of the United States Constitution. *See, e. g.*, Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Larsen v. Gallogly, 361 F.Supp. 305 (D. R.I.1973); Wymelenberg v. Syman, 328 F.Supp. 1353 (E.D.Wis.1971); Alaska v. Adams, Alaska, 522 P.2d 1125 (1974);

Peff v. Peff, 2 N.J. 513, 67 A.2d 161 (1949). The plaintiff in this case, however, has presented no credible evidence as to any constitutional violation. Furthermore, the plaintiff has not shown that he will suffer great and immediate irreparable harm if the requested relief is not granted by this Court.

This opinion is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) F.R.Civ.P.