OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### AND PREROGATIVE COURT.

**NOVEMBER TERM. 1890.**

CLARKSON A. COLLINS, guardian *ad litem* of Gardner T. Voor-
hees and Margaret L. Voorhees, appellants,

*v.*

CHARLES E. VOORHEES, respondent.

1. A man knowing that he is not legally divorced from his wife, by marry-
ing another woman does not, on the latter occasion, give his assent to a legal
matrimonial contract, and, consequently, a continuance of cohabitation with
the second woman after the death of his wife will not *per se* prove an intention
on his part to enter into a second marriage.

2. Cohabitation attended with matrimonial habit and repute does not consti-
tute a marriage; it is merely testimony of marriage, and as such is subject to
rebuttal.

Motion for a reargument. On appeal from the court of
chancery, reported in *2 Dick. Ch. Rep. 315.*

555

*Mr. Cortlandt Parker,* for the motion.

The opinion of the court was delivered by

BEASLEY, C. J.

This motion is refused, and the record is ordered to be remitted.

Inasmuch as it appears that counsel has misconceived the ground on which this case was decided by this court, it seems proper that I should state that ground as it was understood by me.

This court was called upon to apply the law to the following facts, viz. : 'In the year 1867 one Abraham Voorhees brought suit in the superior court of Connecticut for divorce against his wife Camilla for desertion. This proceeding was a fraud from beginning to end, on the part of the plaintiff. No notice of it was given to the wife, who at the time was a resident of this state, and, consequently, according to the decision of this court in the case of *Doughty* v. *Doughty, 1 Stew. Eq. 581,* the decree that ensued was, in this jurisdiction, an absolute nullity.

This being the situation, Voorhees married a second time, and the question to be decided was with respect to the validity of this latter marriage.

On that subject this court held, in the first place, that inasmuch as the divorce granted in Connecticut was absolutely void in this state, such second marriage had no legal force whatever. This was a necessary conclusion, as long as the case just cited remained unreversed. But another question arose. It appeared that after this second marriage the first wife obtained a divorce from her husband, and that subsequently to that occurrence Voorhees cohabited with his so-called second wife, and treated her before the world as though he were married to her. And it was urged that such cohabitation formed the basis of an inference that there had been an interchange of consent to marriage after the dissolution of the first marriage.

This inference was rejected by this court on two grounds.

First, that an interchange of consent was not to be deduced from cohabitation accompanied with matrimonial habit and repute, in a case wherein it appeared that the parties had been living together as husband and wife by force of a ceremonious marriage, to which as a valid act one of the parties, in point of fact, had not assented.

The court found as a fact in this case that the husband, Voorhees, knew that he had no legal power or right to contract this second marriage; that he was aware that the divorce fraudulently obtained by him was a nullity; what he did consent to was to deceive the so-called second wife, and to live with her with the appearance of being married to her; he did not consent to marry her in any legal sense whatever. Under these circumstances, this court decided that his continued cohabitation with this woman, after the obstacle to their marriage had been removed, did not prove that he had changed his original intent, which was to live with her without being legally married to her. It was deemed that cohabitation with habit and repute being accompaniments of the original *status*, could not *per se* be taken as proof that a new *status* had been agreed to by the parties. Voorhees, as just stated, had consented to an illegitimate connection, attended with the concomitants of habit and repute. The continuance of such concomitants could not, by their unassisted probative force, lead, with any show of reasoning, to the conclusion that the man, when he was at liberty to form a legal connection with the woman, had embraced the opportunity. To treat evidence which was in all respects and to the utmost degree in accord with the original purpose as proving, *propria vigore*, a change of such purpose, appeared to be not only inadmissible according to legal rules, but as being in logic ridiculous.

This construction of the evidence, it was believed, stood opposed to but a single case, which is that of *Breadalbane*, reported in *L. R. (2 H. L. Sc.) 269*. The doctrine of that case is supported by nothing that preceded or that has followed it, and is altogether anomalous, and, as it seems to me, it was properly rejected by this court. In that case the court acted upon the principle, that if a man and woman agreed to live together adulterously, with

a simulation of marriage, that there should be an inference of a subsequent valid marriage, from the fact that such simulation had been continued after the death of the husband of the adulteress. Why such an inference is to be thus deduced is not apparent, unless it be for the promotion of adultery. By its prevalence the adulterous purpose is converted into a matrimonial purpose, without a particle of reasonable evidence in support of the alleged change of intention. Such a course is opposed, as it seems to me, to morals and public policy. Lord Wesbury read the opinion in the case, and he has no better reason to offer in favor of the principle adopted than that he can find no ruling the other way. He does not pretend that he can find anything in its favor, and in his remarks he strangely compares the case before him with those instances where the parties intended originally to marry and not to commit adultery, their intent being frustrated by the existence of some unknown obstacle. And yet it is presumed that no one who will look with any care into the subject will have the slightest doubt that these two classes of cases, with respect to the methods of their proof, respectively rest upon entirely different foundations; for when the parties have intended marriage, being ignorant of an existing impediment, all that is to be established by cohabitation apparently matrimonial, subsequent to the removal of such impediment, is the carrying into effect by the parties of their original purpose; but when the original purpose was to live in adultery, the evidence, under similar circumstances, must be sufficient to show an abandonment of such purpose and the execution of a new one. These lines of cases can be confounded only by want of careful observation of the principles upon which they rest.

Nor in the present case would the result have been varied if the rule thus rejected had been adopted, for the evidence before the court, reasonably construed, would have been deemed to be opposed to the contention of the appellants.

. The proofs on the subject amount to demonstration. The second wife was one of the witnesses in the cause, and she testified that she never knew, or had the least intimation, until after the death of her husband, that the validity of their marriage was, in

any respect, called in question; and when she was asked, "Was any other marriage ceremony ever performed in which you and Abraham Voorhees were the contracting parties?" her answer was, "There was not." Further than this, she was then fully examined by her own counsel, and she made no pretence of any other interchange of consent to marriage between herself and the man she cohabited with except such as had been given at the time of their ceremonious nuptials. Most certainly this evidence, if we apply to it the ordinary legal tests, is entirely conclusive, and absolutely proves that there never was any second marriage, in any form whatever, between these parties. It is to be borne in mind that cohabitation with matrimonial habit and repute is, standing alone, nothing more than testimony in proof of marriage; the conduct of the persons to whom it relates does not constitute marriage, and, consequently, from its evidential nature, it is liable to be rebutted by other proofs. This, as has been already said, was done in the present instance.