8 N.J. Super. 504 (1950)
73 A.2d 628
CECILE CHIRELSTEIN, PLAINTIFF,
v.
NATHAN CHIRELSTEIN, DEFENDANT, AND HELEN CHIRELSTEIN, INDIVIDUALLY, AND HARRY CHIRELSTEIN AND DIANE CHIRELSTEIN, INFANTS, BY THEIR GUARDIAN AD LITEM HELEN CHIRELSTEIN, INTERVENORS.
Superior Court of New Jersey, Chancery Division.
Decided May 16, 1950.
*508 Mr. Benjamin M. Ratner, attorney for plaintiff.
Mr. Edward J. Gilhooly (Messrs. Gilhooly & Yauch, attorneys), for defendant.
Mr. Aaron Lasser (Messrs. Hannoch & Lasser, attorneys), for intervenors.
SCHETTINO, J.S.C.
Plaintiff and defendant went through a ceremony of marriage in the State of New York on January 9, 1934. Prior thereto plaintiff had been married to James G. Rogers, who in 1924 obtained a final decree of divorce from her in New York on the ground of her adultery.
Immediately following the marriage ceremony, plaintiff and defendant came to New Jersey where they lived as husband and wife for a period of disputed duration.
On March 22, 1937, after a substantial period of separation, plaintiff obtained a final decree of divorce in the State of Florida. Defendant appeared therein and filed an answer. The decree is wholly silent on the subject of alimony. However, on March 18, 1937, the parties had entered into a written agreement at Miami, Florida, whereby, in contemplation of *509 the divorce, defendant transferred to plaintiff assets worth $16,250, plus the sum of $1,000 in cash, which plaintiff agreed to accept "in full payment of any and all claims of whatsoever nature that Cecile Chirelstein has had in the past, now has, or may have in the future for maintenance, support alimony and all other claims that have arisen or that may arise by reason of the marriage relationship heretofore and now existing between said parties, and that no other claims will be made by the said Cecile Chirelstein upon the said Nathan Chirelstein by reason of such marriage relationship." No children were born of their marriage.
On May 13, 1937, Chirelstein married again. His second wife and two children by their marriage have intervened in the present cause.
Rogers is still alive.
On September 23, 1949, plaintiff instituted this action against Chirelstein for alimony, alleging that their marriage had been terminated by the Florida decree.
That complaint is virtually identical with a bill of complaint filed by her under the name of Cecile Rogers against Chirelstein in the Court of Chancery on May 15, 1939. In that proceeding, on defendant's motion to strike "on the ground that the matters and things set forth in the bill of complaint do not show any ground for equitable relief," the bill was dismissed by a "final decree" dated July 11, 1939, which provided that the dismissal was "with prejudice." No appeal was taken.
On September 25, 1940, plaintiff under the name of Cecile Chirelstein filed a petition for divorce in the Court of Chancery. No reference was made therein to the Florida decree. An application for alimony pendente lite was denied on November 7, 1940. Advisory Master Herr filed a memorandum in which he grounded the denial upon the statement that, despite charges made by plaintiff in an affidavit, the Florida decree is not void and that until that decree was voided, "she is not the wife of the defendant, and is not entitled to maintenance or suit moneys from him." An answer was filed. No *510 further proceedings were had until the action was dismissed after the institution of the present proceedings, upon a recital that plaintiff elected to proceed in the present suit.
The complaint in the present suit was amended. As amended, the complaint proceeds upon two alternative bases. In the first count, plaintiff seeks alimony on the hypothesis that her marriage to defendant was terminated by the Florida decree. The remaining counts alternatively allege that if the Florida decree is void she is entitled to a relief on the basis of a subsisting marriage. The second count seeks a divorce from bed and board while the third count seeks a divorce from the bonds of matrimony on the grounds of adultery with the intervenor-wife. The intervenor-wife counterclaims against plaintiff seeking a decree that intervenor's marriage to Chirelstein is valid.
Out of this marital confusion arise many questions:
1. Should plaintiff be required to elect to proceed on the hypothesis that the Florida decree terminated the alleged marriage or the hypothesis that it was inefficacious?
2. Was the marriage between plaintiff and defendant in New York valid under the law of that state in view of the circumstance that under the New York statute remarriage by a defendant divorced for adultery is prohibited except under conditions not here met?
3. If the New York marriage was void, did a common law marriage arise in New Jersey?
4. Is the Florida decree entitled to full faith and credit under the facts asserted by plaintiff?
5. If the Florida decree is entitled to full faith and credit, does it bar an inquiry as to whether the parties were in fact married prior thereto?
6. Under the Florida law did any right to alimony survive the decree notwithstanding that the decree was silent on the subject?
7. If no such right existed under Florida law, can New Jersey, by virtue of the amendment in 1938 to R.S. 2:50-37, grant alimony?
*511 8. Does the dismissal "with prejudice" of the 1939 action constitute a conclusive determination that plaintiff is not entitled to alimony?
9. Do the circumstances of the case call for a refusal to grant relief by reason of unclean hands, notwithstanding that the Florida decree is entitled to full faith and credit and plaintiff is otherwise entitled to prevail?
10. Assuming that plaintiff is in a position to claim alimony, may alimony be denied because of the circumstances of the case, and if so should alimony here be denied?
I do not think it necessary to consider all of these perplexing issues to reach a conclusion in this case.
Defendant demands that plaintiff elect whether to proceed on the theory of a dissolved marriage or a subsisting one. I see no basis for requiring an election. Where the interplay of the facts and the law is such that the legal soundness of the respective legal positions is debatable, alternative or hypothetical claims should be permitted. I can perceive no reason for requiring a litigant in these circumstances to make a conclusive anticipation of the views of the court. Modern rules of pleading permit alternative or hypothetical claims. Where the judicial treatment of the facts is in doubt, justice demands that the litigant be permitted to assert alternative positions which depend upon the successive determinations of the issues raised by the facts.
The first issue affecting the ultimate merits is whether plaintiff and defendant entered into a valid marriage.
The New York decree of divorce terminating her marriage to Rogers was obtained by him on the ground of adultery. Section 8 of the New York Domestic Relations Law provides that a defendant for whose adultery the judgment of divorce is granted in that state may not remarry in the lifetime of the complainant unless the court in which the judgment of divorce was rendered shall modify the judgment upon satisfactory proof that three (3) years have elapsed since the decree and that the conduct of the defendant since the dissolution of the marriage has been uniformly good. Section 6 *512 denounces a marriage in violation of section 8 as "absolutely void." It is admitted that the marriage between the plaintiff and defendant in New York was in violation of section 8. From the expert testimony offered and my examination of the New York cases construing the statute, I am satisfied and find that the purported marriage between them was absolutely void. Heidig v. Heidig, 6 N.Y.S.2d 405 (Sup. Ct. 1938); In re Miccio's Estate, 193 Misc. 754, 86 N.Y.S.2d 30 (Sur. Ct. 1949).
The New York statute prohibiting remarriage has no extraterritorial effect. Hence had the marriage between the parties occurred in New Jersey, its validity would not have been assailable by reason of that consideration. King v. Klemp, 26 N.J. Misc. 140, 57 A.2d 530 (Ch. 1947); 27 C.J.S. 842; 51 A.L.R. 325; 32 A.L.R. 1116. Indeed, it appears that New York would have recognized such marriage if contracted in New Jersey. Fisher v. Fisher, 250 N.Y. 313, 165 N.E. 460 (Ct. of App. 1929), annotated in 61 A.L.R. 1528; In re Briggs' Estate, 138 N.Y. Misc. 136, 245 N.Y.S. 600 (Sur. Ct. 1930). Hence the impediment which prevented the making of a valid marriage in New York was removed when the parties returned to New Jersey after the ceremony. At that time common-law marriages were permitted. R.S. 37:1-10, which outlaws such marriages entered into on and after December 1, 1939, obviously does not affect the determination of the present cause. Cf. Brown v. United States, 72 F. Supp. 153 (D.C.N.J. 1947); affirmed, 164 F.2d 490 (C.C.A.3d, 1947); cert. den., 333 U.S. 873 (1948). The discussion which follows pertains to transactions prior to the statute.
The question therefore is whether it can be found that the parties entered into a common law marriage in this State. Plaintiff testified that the clerk in the marriage bureau advised her that she could not lawfully remarry if the divorce decree ran against her. She accordingly knew of the impediment, and her false statement in the application that she was the successful party in the divorce proceedings further evidences *513 her knowledge. She testified that defendant was present when the clerk delivered the admonition and was a party to the falsity of the application. He denies the truth of the testimony and insists that he first learned that the New York decree ran against her just prior to the trial of the present cause. I believe his testimony and find as a fact that he was not, prior to that time, aware of the impediment to the marriage.
Two poles of the general problem are well established in this State. It is settled that where both parties to a marriage are then ignorant of the existence of an impediment, their continued cohabitation as man and wife after the removal of the impediment spells out a common-law marriage even though both were likewise unaware of the removal of the impediment. Dolan v. Wagner, 96 N.J. Eq. 298 (E. & A. 1924); Robinson v. Robinson, 84 N.J. Eq. 201 (E. & A. 1915); Chamberlain v. Chamberlain, 68 N.J. Eq. 736 (E. & A. 1905); Sturm v. Sturm, 111 N.J. Eq. 579 (Ch. 1932); Margulies v. Margulies, 109 N.J. Eq. 391 (Ch. 1931); Burger v. Burger, 105 N.J. Eq. 403 (Ch. 1929). The philosophy underlying these authorities is that where both parties intended a valid marriage, that intent presumably continued and was gratified by a common-law marriage readily inferable from the subsequent conduct of the parties. Such difficulty as a theorist might have with the absence of a more explicit demonstration of the act of entering into a new marriage easily yields to the logic of reality and the public interest which is served by effectuating the true intent, expectations and hopes of the parties.
On the other hand, where both parties were aware of the impediment at the time of the purported marriage, a common-law marriage will not be found in the absence of proof that after the removal of the impediment the parties did in fact enter into a fresh agreement of marriage. In re Franchi's Estate, 119 N.J. Eq. 457 (Prerog. Ct. 1936); affirmed, 121 N.J. Eq. 47 (E. & A. 1936); Schaffer v. Krestovnikow, 89 N.J. Eq. 549 (E. & A. 1918); Bellesheim *514 v. Police Pension Fund Comm., 5 N.J. Misc. 430 (Sup. Ct. 1927). The reasoning is that where the parties initially intended their relation to be meretricious, affirmative proof is necessary to establish that that intent was replaced by a marital intent and agreement after the impediment disappeared.
Under my findings, the present case falls between these poles. Plaintiff knew of the impediment, while defendant did not. It is strenuously argued that a situation of this kind should fall within the first category of cases; that an estoppel should be found against the one with knowledge, and that, as to the one who married in ignorance, the considerations of public policy which underly the rule applicable in the situation in which both were unaware of the impediment are here of equal force. The justice of this contention is particularly emphasized where, as here, the party aware of the impediment in fact sought a marital relation and undoubtedly hoped that the impediment would never come to light.
However, I think the issue, so far as this court is concerned, is otherwise concluded by Collins v. Voorhees, 47 N.J. Eq. 555 (E. & A. 1890), in which it was held that, in the circumstances of this case, it must be proved that the parties in fact entered into a contract of marriage after the impediment was removed. The soundness of that result was questioned in a dictum by the Court of Chancery in Chamberlain v. Chamberlain, 68 N.J. Eq. 414, 421-422 (1905), but the Court of Errors and Appeals, in affirming that case, did not intimate approval of that criticism, 68 N.J. Eq. 736, 739 (1905). The continued effectiveness of Collins v. Voorhees appears to be recognized. Bey v. Bey, 83 N.J. Eq. 239, at 264 (Ch. 1914); In re Lenart, 125 N.J. Eq. 129, 133 (E. & A. 1939).
The facts foreclose a finding that a common law marriage was made. Plaintiff and defendant both disclaim any agreement subsequent to the New York ceremony, and this joint disclaimer is substantiated by my finding that he did not learn of the impediment until years after their final separation. Hence the parties were never validly married.
*515 Plaintiff testified that the New York decree was the product of collusion between her and Rogers. An attack upon that decree manifestly cannot improve her position here, because a successful attack would leave her married to Rogers who, in fact, is still alive.
What, in these circumstances, is the effect of the Florida decree? Plaintiff contends that the Florida decree conclusively adjudges the validity of the marriage to defendant. At the same time, plaintiff, in resisting defendant's claim that under the Florida law no right to alimony survived that decree, earnestly attacks the Florida decree as fraudulent and collusive.
The Florida decree does not in so many words contain a finding that the parties were lawfully married, although it does adjudge that "the plaintiff and the defendant are hereby divorced, and the bonds of matrimony heretofore and now existing between these said parties are hereby terminated and dissolved, and held for naught." No testimony was offered or authority cited as to whether Florida, in a subsequent proceeding between the parties, would hold that her decree for divorce conclusively adjudged the prior validity of the marriage.
The authorities elsewhere bearing upon this problem will be found in 27 C.J.S. p. 832; 17 Am. Jur. 396, 400; 45 A.L.R. 925; see Re Estate of Holmes, 291 N.Y. 261, 52 N.E.2d 424 (Ct. of App. 1943), and cf. Adams v. Adams, 80 N.J. Eq. 175, at 178 (E. & A. 1912).
The question whether the Florida decree must be taken by us to be a conclusive adjudication that there was a valid marriage between the parties, is complex. It involves a consideration of the law of Florida; an apparently original determination as to what effect New Jersey would give to its own judgment of divorce in this situation; the effect to be given to the circumstance that Chirelstein was ignorant of the invalidity of the marriage, whereas plaintiff was fully aware of the impediment; [see Smith v. Foto, 285 Mich. 361, 280 N.W. 790, 120 A.L.R. 801 (Sup. Ct. 1938)]; the question *516 whether the full faith and credit clause compels a sister state to give effect to anything more than so much of a divorce decree as determines that thenceforth the parties are no longer married; and indeed the broader question whether the full faith and credit clause leaves the state of subsequent domicil completely free to invoke its own public policy with respect to alimony where plaintiff does not hold a decree for alimony itself entitled to full faith and credit. In the light of the views immediately following, I do not feel obliged to unravel that entangled problem.
I am satisfied that the Florida decree is not entitled to full faith and credit because of the fraud whereby it was procured. Plaintiff testified that immediately prior to the institution of the Florida suit, plaintiff and defendant were domiciled in New Jersey; that she never intended to become a resident of Florida; that she in fact did not arrive in Florida until but a few days before the commencement of her action there; and that her testimony in the Florida suit as to residence was perjured.
I am satisfied not only that the plaintiff did not have a bona fide domicil in Florida, but that in fact she was not even physically present in Florida for the residential period required by its laws.
The United States Supreme Court has held that where the defendant in divorce proceedings appears and participates therein and had an opportunity to raise the jurisdictional issue, the decree of divorce is ordinarily entitled to full faith and credit. Sherrer v. Sherrer, 334 U.S. 343 (1948); Coe v. Coe, 334 U.S. 378 (1948); see Peff v. Peff, 2 N.J. 513 (Sup. Ct. 1949). But I do not believe that these cases go the length of requiring full faith and credit to be given to a decree which the plaintiff herself acknowledges to have been obtained by a fraud practiced upon the Florida court, as well as upon the State of New Jersey, and where the defendant's "participation" in the proceeding did not apparently extend beyond the filing of a perfunctory answer, which at most operated to lift the Florida suit to a scarcely perceptible level *517 above an ex parte proceeding. Cf. Isserman v. Isserman, 2 N.J. 1 (Sup. Ct. 1949). The State of Florida certainly has no interest which is infringed by a refusal to recognize a decree thus confessedly obtained by fraud upon it, with respect to persons with whom that state had no domiciliary concern.
I do not mean to intimate that upon another view of the issue of the validity of the marriage between plaintiff and defendant, plaintiff would be heard to challenge the Florida decree for her advantage. In that eventuality, she might well be estopped to do so. However incongruous it may at first seem to say that a party may not rely upon a foreign decree and yet may not be heard to challenge it, I believe that a consideration of the basic equities dissipates the superficial anomaly.
Finally, I conclude that even if plaintiff and defendant were lawfully married, and if the Florida decree were here effective, and if a right to alimony survived that decree, and if that right were otherwise enforceable in this State, I should nonetheless deny alimony. Whether alimony should be granted rests in the discretion of the court. Shepherd v. Ward, 6 N.J. Super. 130 (App. Div. 1950). That discretion, of course, may not be arbitrarily exercised. At the same time no rigid formula for its exercise can be devised. In the last analysis, the most that a court can do is to reach a conscientious conclusion on all of the facts. McFeeley v. Board of Pension Com'rs., 1 N.J. 212, 215 (Sup. Ct. 1948).
The facts militate overwhelmingly against plaintiff. She has dealt indifferently with the laws of several states affecting a basic institution. She proclaims that the New York decree was obtained collusively. She falsified the application for a marriage license there and remarried with knowledge that the New York law forbade that union. She confesses that she perpetrated a fraud upon this State and upon Florida. She blandly confesses outright perjury in the Florida proceedings. Her actual cohabitation with defendant was of a brief duration. She bargained for and accepted a substantial *518 lump sum payment. Thereafter she burdened defendant with two actions, in addition to this one, one of which she permitted to lie dormant for nine years. By the Florida proceedings she set the stage which made possible defendant's union with the intervening wife and the birth of children of that marriage. I cannot believe that, in such circumstances, any award, however nominal, can be squared with elementary justice.
Hence all counts of the complaint will be dismissed with prejudice.
The intervening wife prays for judgment declaring her marriage to defendant to be valid. Defendant does not appear to be a party to her counterclaim. There is no allegation of any controversy between her and him. Hence no issue was raised by her as against him, and I do not suppose that any in fact exists. However, in the absence of a pleaded controversy between them, a judgment as against him would appear to be a nullity. Scott v. Stewart, 2 N.J. 508 (Sup. Ct. 1949).
The intervening wife prays also for a judgment against plaintiff enjoining further charges of adultery against her by plaintiff. Nothing in the proof suggests the present need for that relief. Hence I need not consider the possible objections to a judgment of that character. It will be time enough to ponder that issue when and if the facts call for a determination.
She further prays for a determination that she is not guilty of adultery as charged in the complaint. My findings with reference to the complaint and the judgment to be entered thereon effectively acquits her of that charge.
Counsel for plaintiff seeks an allowance against defendant. Despite his labors, I feel that plaintiff's basic position is so inequitable that counsel fees cannot in good conscience be assessed against defendant. Nor will counsel fees be assessed against plaintiff.
Submit judgment in accordance with these views.