12 N.J. Super. 468 (1951)
79 A.2d 884
CECILE CHIRELSTEIN, PLAINTIFF-APPELLANT,
v.
NATHAN CHIRELSTEIN, AND OTHERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1950.
Decided March 20, 1951.
*474 Before Judges JACOBS, EASTWOOD, and BIGELOW.
Mr. Benjamin M. Ratner argued the cause for the appellant.
Mr. Edward J. Gilhooly argued the cause for the respondent Nathan Chirelstein (Messrs. Gilhooly & Yauch, attorneys).
Mr. Aaron Lasser argued the cause for the respondent-intervenors, Helen Chirelstein, et al. (Messrs. Hannoch & Lasser, attorneys, and Mr. Irving Lloyd Gang, on the brief).
*475 The opinion of the court was delivered by BIGELOW, J.A.D.
This is a matrimonial cause with some unusual complications in the law, but with little dispute over the material facts. The complaint contains three causes of action, of which the last two were added by amendment three months after the original complaint was filed, embodying only the first claim. The first count or claim alleges: The parties were married in 1933 by the city clerk at the Municipal Building in New York. The plaintiff obtained a final decree of divorce from the defendant in 1937, in the Circuit Court for Dade County, in the State of Florida. The decree contained no provision for alimony or for the support of plaintiff. After the decree was entered, the defendant gave her $1,000 in money and $15,000 in securities, and he has made no provision for her since. The plaintiff is destitute, in poor health and has no means of support. She prays judgment compelling defendant to support her. The answer to the first claim denies the validity of the marriage for reasons that need not be presently stated, and, among other defenses, pleads res adjudicata: That plaintiff in 1939 instituted a suit in the Court of Chancery of New Jersey on the same cause of action, and a final decree was entered therein dismissing the bill.
The second and third causes of action, which were added to the complaint after the first count had been answered, allege that the defendant asserts that the Florida decree is void and without legal effect. Plaintiff contends that the Florida divorce is valid, yet if it be void, she avers: The parties were lawfully married and "were husband and wife and considered each other as such under the common law." Then follow, in the usual form, a charge of desertion and a charge of adultery with one Helen Chirelstein. "The defendant and this co-respondent live together and represent themselves to be lawfully married and that they are husband and wife." Plaintiff demands a judgment of divorce from bed and board and for alimony. In answer to these counts, the defendant denies that he and plaintiff were validly married *476 or were husband and wife. He says he does not contend that the Florida divorce is void, but only that it does not establish the validity of plaintiff's pretended marriage to him. The defendant counterclaims for a declaratory judgment that the plaintiff was never validly married to him.
The defendant's second wife, Helen Chirelstein, and their two infant children were permitted to intervene and answered and counterclaimed. They ask a declaratory judgment establishing the validity of the Florida divorce.
The Chancery Division, after receiving testimony, adjudged that:
"1. The pretended ceremonial marriage between the plaintiff and the defendant made in the City, County and State of New York on January 9, 1934, was absolutely void and also a nullity.
2. There never was any common-law marriage between the plaintiff and the defendant nor were they ever validly married to each other.
3. The decree of divorce obtained in the Circuit Court of the 11th Judicial Circuit in and for Dade County, Florida, is not entitled to full faith and credit for the purpose of establishing the validity of the pretended marriage between the plaintiff and the defendant in the State of New York as aforesaid because of the fraud practiced by the plaintiff wherein and whereby the aforesaid divorce was obtained by the plaintiff.
4. The facts disclosed at the trial were such that the plaintiff is not entitled to alimony.
5. The plaintiff's application for alimony is hereby denied."
We will deal with the questions presented on a somewhat different plan from that followed in the Chancery Division by our colleague, Judge Schettino, whose opinion appears in 8 N.J. Super. 504 (1950). Assuming that the parties were at one time husband and wife, and that they were validly divorced, as alleged in the first claim, let us consider whether plaintiff is barred from her action for alimony by the Chancery decree. The material allegations of the first count and of the bill of complaint that was filed in 1939, are the same, and the relief prayed is the same. Both were framed on the same theory, namely, that the 1938 amendment to R.S. 2:50-37, L. 1938, p. 538, gave plaintiff a cause of action for *477 alimony based on the Florida divorce. The defendant moved in the earlier suit to dismiss the bill "on the ground that the matters and things set forth in the bill of complaint do not show any ground for equitable relief." That motion was granted and upon it a final decree was entered "that the complainant's bill of complaint be and the same is hereby dismissed with prejudice."
The phrase "with prejudice," which is somewhat unusual in this jurisdiction, must be noticed. The use of the expression is more common in the western states, Annotation, 149 A.L.R. 625. Especially upon the voluntary dismissal of an action as a result of a settlement, it is inserted to indicate finality, Bank of America v. Jorjorian, 24 N.E. (2d) 896 (Ill. 1940); Maib v. Maryland and Casualty Co., 135 P. (2d) 71 (Wash. 1943). When the dismissal with prejudice is not voluntary, it has been said to imply a decision on the merits. But where the record shows that the action was dismissed for want of prosecution, or other reason that does not touch the merits, the addition of the words "with prejudice" cannot change the facts and the plaintiff is not concluded. Pueblo de Taos v. Archuleta, 64 F. (2d) 807 (10th Cir. 1933); Goddard v. Security Title etc. Co., 83 P. (2d) 24; 92 P. (2d) 804 (Cal. 1939). In an order like the one that we have under consideration, the phrase is as apt to confuse as to enlighten.
According to the practice of the Court of Chancery since 1915, a motion to strike a bill on the ground that there is disclosed no cause of action, was the equivalent of a general demurrer. It is the rule that a final judgment for the defendant on the ground that the complaint fails to state a cause of action is conclusive. While the plaintiff is generally not precluded from maintaining a new suit on his original cause of action, provided his second complaint contains new allegations remedying the defect that made his first complaint demurrable, yet he cannot relitigate the question that has already been decided. He cannot sue a second time on what is substantially his old complaint. Restatement, Judgments, *478 § 50. Hale v. Lawrence, 22 N.J.L. 72, 80 (Sup. Ct. 1849); Linton v. Perry Knitting Co., 64 N.E. (2) 270 (N.Y. 1945); Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657 (1946).
No opinion was filed in the Court of Chancery setting forth the reasons of the dismissal. Plaintiff's counsel surmises "that the court concluded that since the wife had taken a lump sum settlement after the foreign decree for divorce," she did not "present any cause for equitable relief." The defendant suggests that the court considered that the 1938 amendment to R.S. 2:50-37 did not authorize an award of alimony based on a foreign decree entered in 1937, that is, before the amendment became effective. It does not matter which was the ground of decision, for in either case, it was a decision on the merits and so concludes the parties. We recognize that there is a sense in which an alimony decree is not conclusive. Conditions may change: the needs of the former wife may grow with sickness, or the loss of other income; or she may remarry. Or the husband's ability to pay alimony may dwindle or grow. The court may make a new judgment based on the new situation. Lasasso v. Lasasso, 1 N.J. 324 (1949). But in the litigation before us, there has been no substantial change since the decree of 1939 was made. Plaintiff's argument, in essence, is that the decree was erroneous. Even if it were erroneous, it precludes the plaintiff from recovering on her first claim. The error should have been corrected through the process of appeal, and not by means of a new suit.
The second and third causes of action, charging desertion and adultery, are predicated on the hypothesis that the divorce decree entered in Florida was void. But plaintiff-appellant, like the other parties, protests that the Florida decree is entirely valid. Her complaint alleges, "The defendant, however, contends that this divorce is void and without legal effect. Plaintiff contends that the divorce is valid in the state where it was granted, and also in the State of New Jersey." In her brief, she vigorously upholds the Florida *479 decree. The defendant's answer avers, "This defendant does not contend that the divorce obtained by plaintiff in Florida as aforesaid was void." With this unanimity, judgment could hardly be rendered for the plaintiff founded on the theory that the divorce is void. She cannot succeed on her second and third claims.
The Chancery Division found that even if all other defenses failed, the court should exercise discretionary power to deny an award of alimony. Inasmuch as we find the plaintiff's prayer for alimony is barred by the decree in her prior action, we need not delve into this branch of the decision. We incline, however, to the opinion that the court's discretion whether to grant or deny alimony or separate maintenance, is rather limited in scope, and we are doubtful whether the misconduct of plaintiff recited in Judge Schettino's opinion constitutes a sufficient ground for a denial of alimony.
The second wife and the two infant children of her union with Chirelstein ask a declaratory judgment affirmatively establishing the validity of the Florida divorce, while the husband seeks a declaration that he and plaintiff were never man and wife. Chirelstein, the defendant, and the plaintiff, Cecile, regarded themselves as man and wife from 1934 until the entry of the Florida decree in 1937. They resided in New Jersey and neither of them ever lived in Florida. They concocted together to pretend falsely that the woman was domiciled in that state, so that its courts would have jurisdiction to divorce them. Defendant provided plaintiff with the necessary funds to obtain the divorce; he entered an appearance and filed an answer in order to facilitate her suit. So much is established by the oral testimony in the present action. But the Florida record is not in evidence here. Not the bill of complaint for divorce or the answer, not even the master's findings and recommendations, were put in evidence; only the bare decree. The pleadings, the findings, and all the essential parts of the record should have been presented. Wigmore on Evidence §§ 2110 and 2450. 30 Am. Jur. 993, Judgments § 274; 50 C.J.S. 408, *480 Judgments § 840. In Florida, where the judgment was rendered, it would not have been received in evidence, over timely objection, unaccompanied by the other parts of the record. Clem v. Meserole, 32 So. 815 (Fla. 1902). In this situation, we ought not be called upon to say what effect the Florida decree should be given in New Jersey. It is possible that the record, if proved, would be entitled to full faith and credit in litigation between the parties, although the decree contains no adjudication or finding of jurisdiction or with respect to the domicile of either party. Sherrer v. Sherrer, 334 U.S. 343; 68 S.Ct. 1087, 1 A.L.R. (2) 1355 (1948); Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 1 A.L.R.(2) 1376 (1948). And also it is possible that on the trial of an indictment, the State could prove the fraud that was practiced on the Florida court. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 157 A.L.R. 1366 (1945). While Judge Schettino, in his opinion, expressed the view that the Florida decree is not entitled to full faith and credit because of the fraud whereby it was procured, he properly refrained when rendering judgment from declaring the effect of the Florida decree.
There is one aspect of that decree, however, that was dealt with, in a negative sense, by the Chancery Division. It adjudged that the decree of the Circuit Court for Dade County did not establish the validity of the marriage between the parties that was performed in New York. We agree with the result, although not with the reasons given.
We should not accord to the Florida decree a greater effect than it has under the law of Florida. U.S.C.A., Title 28, § 1738. Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208 (1943). The principles of res judicata, which are applied by the courts of Florida, seem to be the same as those followed in the United States generally. The scope of the estoppel depends upon whether the subsequent action is founded upon the same claim or demand as was the first action, or upon a different one. It is obvious that plaintiff's claim for alimony, based as it is *481 on the Florida decree, and her alternative claim for a limited divorce on the grounds of desertion and adultery occurring since the date of that decree, cannot be the same as the cause of action on which the Florida decree was granted. In a second suit, on a different claim from that presented in the prior action, only those matters actually litigated and determined in the first suit are res judicata, and the first judgment is not conclusive as to matters of fact, or of law, that might have been but were not litigated. Prall v. Prall, 50 So. 867, 26 L.R.A.N.S. 577 (Fla. 1909); Restatement, Judgments, §§ 68 and 70(c). This seems also to be the New Jersey rule. Phillips v. Phillips, 118 N.J. Eq. 189 (Ch. 1935), affirmed on this branch, 119 N.J. Eq. 497 (E. & A. 1936), where a wife had recovered two judgments in New York for installments due on a contract by her husband to pay monthly sums to her. In a suit for later installments, the husband was permitted to show that the whole contract was void ab initio on certain grounds that had not been presented in the earlier actions. But compare McAlpin v. Garfield, 137 N.J.L. 197 (E. & A. 1948).
While we are hampered by the lack of a proper record of the proceedings in Florida, the testimony of the parties shows that no issue regarding the validity of the marriage, whether ceremonial marriage in New York or common-law marriage in New Jersey, was presented or litigated in the prior action. So if we follow the general American rule, we find that the Florida decree did not establish the validity of a marriage of any kind, even though the divorce presupposed that the parties were man and wife. This view of the law is supported by Williams v. Williams, 23 N.W. 110, 53 Am. Rep. 253 (Wis. 1885); Smith v. Foto, 280 N.W. 790, 120 A.L.R. 801, at 811 (Mich. 1938), and Ex parte Soucek, 101 F.(2) 405 (7th Cir. 1939). The rule in California is contrariwise. Petry v. Petry, 118 Pac.(2) 498 (Cal. 1941). Furthermore, under the broadest interpretation of res judicata, and the full faith and credit doctrine, the Florida decree establishes, at most, only that the *482 parties were married, not that the New York marriage was valid. The decree is fully satisfied by the hypothesis of a common-law marriage.
We now come to the question whether the plaintiff and Chirelstein were ever husband and wife. The plaintiff at one time was married to a man named Rogers. In 1924, he obtained a divorce from her in the Supreme Court of the State of New York on the only ground for divorce recognized by the law of that state, namely, adultery. Plaintiff was then 21 or 22 years old. Ten years later, she and Chirelstein were married in New York City. The Domestic Relations Law of New York, §§ 6 and 8 (Cons. Laws, c. 14), enacts that a subsequent marriage of one who has been divorced for adultery shall be void if the former spouse is still alive, unless certain proceedings have been taken in the court which granted the divorce. Plaintiff failed and neglected, before remarrying, to take the steps prescribed by the statute. The law of New York is entirely settled that a marriage performed in that state, in defiance of the statute, is void. Cropsey v. Ogden, 11 N.Y. 228 (1854); Merrick v. Merrick, 194 N.E. 55 (N.Y. 1934). Also, it is clear that the validity of a marriage is determined by the law of the place where the marriage ceremony is performed. Capossa v. Colonna, 95 N.J. Eq. 35 (Ch. 1923) affirmed 96 N.J. Eq. 385 (E. & A. 1924). We have no difficulty in concurring with the trial court's determination that the formal marriage of the parties in New York was void.
Did the defendant and the plaintiff become husband and wife by force of what is called a common-law marriage in New Jersey? The parties were resident here at the time of the attempted marriage in the Municipal Building in New York, and thereafter. Immediately the ceremony was finished, they came back to Newark and set up housekeeping as man and wife. Each introduced the other to acquaintances as her husband or as his wife. They continued living together in Newark as married people until plaintiff went to Florida for her divorce. All the usual elements of proof *483 of a common-law marriage were present, and there were no legal obstacles to such a marriage. The New York statute to which we have referred had no extra-territorial effect. Fisher v. Fisher, 165 N.E. 460, 61 A.L.R. 1523 (N.Y. 1929); King v. Klemp, 26 N.J. Misc. 140 (Ch. 1947). Restatement; Conflict of Laws, § 130. Our own statute requiring a marriage license and other formalities was not effective until several years later, December 1, 1939, R.S. 37: 1-10.
The Chancery Division proceeded on the principle that where the parties at the outset intend their relation to be meretricious, that intent presumably continues as long as they cohabit with each other, and no common law marriage arises until the original intent is replaced by a matrimonial intent; that proof of the common law marriage depends on proof of the change in intention. Schaffer v. Krestovnikow, 88 N.J. Eq. 192 and 523 (Ch. 1917), affirmed 89 N.J. Eq. 549 (E. & A. 1918). Meretricious is the adjective form of the noun meretrix, a prostitute. If the evidence proved that when plaintiff went to live with defendant at their apartment in Newark, she intended to be his mistress and not his wife, we would join in the trial court's conclusion that she never became his wife. But we find no proof that she ever intended to be defendant's mistress.
Circumstances are presented as indications of a meretricious intent. Shortly after plaintiff was divorced from Rogers in 1924, she met defendant. It was as Mrs. Rogers that he came to know her. The divorce was mentioned; she said that she  not Rogers  had obtained it. Chirelstein testified that he accepted her statement as fact, and that she never told him anything different. After the two had been acquainted for several years, they decided to marry. At first they planned a marriage ceremony in Newark where they both resided, but defendant's family objected to the union because the bride was not of their religious faith. So, at defendant's suggestion, they decided to get married quietly in New York. At the city clerk's office defendant filled out an application *484 for a license showing plaintiff was a divorced person, and that the divorce had been granted on her petition. Both parties made oath to the truth of the statements in the application.
We are unable to extract from these circumstances the inference that plaintiff intended to enter into a meretricious union with defendant. Plaintiff's concealment from defendant that she had been adjudged guilty of adultery was the normal, predictable act of a young woman anxious to preserve as much of her reputation as she could. At the Municipal Building she continued in her falsehood  even upon her oath. She committed the serious crime of false swearing  so that nothing might interfere with her marriage to defendant. She knew that the law forbade her second marriage; we may easily surmise that she knew the clerk would not perform the ceremony if he were aware that the divorce had been granted for her adultery. But there is no evidence that she knew, or even suspected, that the second marriage would be void. In New York no presumption exists that all men know the law. Municipal, etc., Corp. v. Dobbs, 171 N.E. 75, 68 A.L.R. 1376 (N.Y. 1930). In New Jersey it has been said that there is such a presumption, "strong in the case of a lawyer, or with respect to general laws which are matter of common knowledge; weak, almost non-existent, in respect to details or to laws which touch few persons." Schaffer v. Federal Trust Co., 132 N.J. Eq. 235 (Ch. 1942). But as we have already pointed out, plaintiff, at the time of her attempted marriage in New York, was a resident of New Jersey. There is no presumption that she knew the precise terms of the New York statute, or the effect given the statute by the courts of that state. Shannon v. Ryan, 91 N.J. Eq. 491 (E. & A. 1920). On plaintiff's cross-examination, counsel repeatedly pressed the point:
"And you knew then that you couldn't be married in New York if the Clerk raised that question (of the divorce)? Well, if he married us, why we could be married in New York, couldn't we?"
"And you knew then that you couldn't get married in New York because the divorce had been procured against you? Well, we got married; that is all I know."
*485 "You knew that the Clerk wouldn't issue the license? He did issue the license."
"And when you got your marriage license, you were then married by the Clerk? Yes."
"And you then regarded yourself and Nathan as man and wife? Yes."
Taking the proofs as a whole, nothing whatever indicates that plaintiff was seeking the status of mistress. She wanted to be, and believed that she had become, the defendant's wife. If we accept defendant's unflattering appraisal of her character  she wanted the legal right to financial support that accompanies the status of wife. The defendant likewise desired the plaintiff as his wife.
For several years  as long as the parties lived together  they thought of themselves as married because of the ceremony performed by the clerk in the Municipal Building in New York. Does the circumstance that the parties believed their marital relation to be the result of a marriage ceremony which we have found to be void, prevent reliance now on a common-law marriage? Vice-Chancellor Van Fleet answered the question in the affirmative in Voorhees v. Voorhees, 46 N.J. Eq. 411 (Ch. 1890). He held that where there has been a ceremonial marriage, whether legal or illegal, the subsequent cohabitation of the parties and their reputation as husband and wife do not raise a presumption of a second marriage at a later date, and are not evidence of a common law marriage. The Chancery decree was affirmed by the Court of Errors and Appeals, which neither adopted the Vice-Chancellor's opinion nor presented one of its own. Collins v. Voorhees, 47 N.J. Eq. 315 (1890). Justice Garrison, then beginning his long and distinguished career on the bench, dissented. He pointed out that the policy of the law requires "that all matrimonial conduct shall, if possible, be referred to a matrimonial status."
"If an actual marriage has been solemnized, that circumstance, so far from frustrating the policy of the law, affords the strongest possible case for its application; for where the character of the consent *486 is not in question, but simply its legality, the status of marriage should arise at the earliest moment when the parties are enabled lawfully to do that which they had theretofore ineffectually attempted."
At the next term of court, in response to a motion for a reargument, Chief Justice Beasley presented a vigorous defense of the affirmance. 47 N.J. Eq. 555 (1890). He supported the decree on the same ground relied upon by the Vice-Chancellor, and also on a second theory:
"When the parties have intended marriage, being ignorant of an existing impediment, all that is to be established by cohabitation apparently matrimonial, subsequent to the removal of such impediment, is the carrying into effect by the parties of their original purpose; but when the original purpose was to live in adultery, the evidence, under similar circumstances, must be sufficient to show an abandonment of such purpose and the execution of a new one."
Our law was clarified in Chamberlain v. Chamberlain, 68 N.J. Eq. 414 (Ch. 1905), affirmed Id. 736 (E. & A. 1905). The plaintiff, having a husband from whom she had not heard for some years and whom she mistakenly assumed to be dead, married the defendant. But soon thereafter, as a precaution, she filed a petition and obtained a decree of divorce from her first husband, although she still supposed him dead. She and Chamberlain, the defendant, never went through a second ceremony after the divorce. Under the theory followed by Vice-Chancellor Van Fleet in the Voorhees case, the Chamberlains would have been adjudged not to be man and wife, for their cohabitation would have been referred to the void marriage ceremony. But Vice-Chancellor Stevenson held to the contrary and the appellate court did the like. The latter court found in the evidence "a manifestation of an intent to live together as husband and wife, and with the intention and the actual so living, an actual marriage is established." The court relied on the second ground advanced by the Chief Justice in the earlier case. To the same effect are Robinson v. Robinson, 83 N.J. Eq. 150 (Ch. 1914), affirmed 84 N.J. Eq. 201 (E. & A. 1915), and Dolan v. Wagner, 96 *487 N.J. Eq. 298 (E. & A. 1924). In these cases, the test adopted is whether the parties still mutually desired marriage  in the present tense, at a time when they were both free to marry. If such was their wish and intention, the law esteems them man and wife. Our cases continue to reiterate that marriage is a civil contract, but the expression means little except that entrance into the married state comes only with the simultaneous, voluntary consent of both parties. The cohabitation, the adoption by the woman of the man's name and all the other circumstances giving rise to a matrimonial repute, are not weighed as evidence of the fact that at some time or other the parties said to each other, "I take you to be my wife" or "husband." But rather the circumstances are treated as evidence of their common desire and intention to be man and wife.
Excellent studies on common law marriage and related problems, by Judge Arthur L. Wilder, may be found in L.R.A. 1915 E, 8, 60, 91 and 113. And see annotation in 104 A.L.R. 6.
The proofs clearly establish that plaintiff and defendant were man and wife.
The trial court declined to allow a counsel fee to the plaintiff. We think one should have been allowed but, instead of fixing it ourselves, we would prefer that the trial court reconsider the matter when the record is remanded. Let the judgment of the Chancery Division be modified in accordance with this opinion. As is customary in cases of this character, the defendant will bear the costs of all parties.
JACOBS, S.J.A.D. (concurring).
I consider that the decree dismissing the 1939 bill of complaint with prejudice was intended to and did operate as an adjudication on the merits which, there being no appeal, effectively barred the plaintiff from reasserting the same cause of action in a later proceeding. The fact that the Court of Chancery in reaching its determination to dismiss the bill of complaint may perhaps erroneously have considered that the action could not be *488 maintained (1) because the plaintiff obtained her foreign divorce before the enactment of P.L. 1938, c. 235, p. 538, or (2) because of the consummation of the Florida agreement for payment of $1,000 in cash and $15,000 in securities does not have significance. Cf. Miller v. McCutcheon, 117 N.J. Eq. 123, 130 (E. & A. 1934). In either event there was, in effect, an adjudication that regardless of her need or the defendant's financial capacity she could not assert further claim for alimony.
The plaintiff's present complaint sets forth in its first count the entry of the Florida decree, the payment of the $16,000, her need and the defendant's financial capacity, and seeks an order directing the payment of alimony. In substance it is identical with the 1939 bill of complaint and its prosecution is precluded by the decree of dismissal therein. The second and third counts, however, seek judgment for divorce and alimony and necessarily rest upon the alternative claim (Rule 3:8-5) that the Florida decree divorcing the parties was invalid and their marriage status therefore continued. Although question has been raised as to the lower court's conclusion that the Florida decree was not entitled to full faith and credit (see 64 Harv. L. Rev. 496 (1951); Johnson v. Muelberger, 71 S.Ct. 474 (1951); but cf. Staedler v. Staedler, 6 N.J. 380 (1951); 37 A.B.A.J. 107, 169 (1951)), I need not pursue this issue since I believe that the plaintiff should not in any event be permitted to attack it. In 1937 she freely instituted her Florida proceeding and obtained the Florida divorce as well as the lump sum payment in lieu of alimony. Restatement, Conflict of Laws § 112 (1934). She thereafter instituted her 1939 action in New Jersey for further alimony on the basis of the validity of her Florida divorce. In the meantime the defendant had remarried and a child of this marriage was born, a second child being born thereafter in 1945. She did not institute her present action attacking the Florida divorce until 1949, four years after the birth of this second child. Although another proceeding for divorce had been instituted by her in New *489 Jersey in 1940 it withheld reference to the Florida decree and was not prosecuted after denial of a preliminary application for alimony in 1940.
It seems to me that the situation calls for the application of pertinent equitable principles which would preclude the plaintiff's attempt to attack the validity of the Florida divorce. See Herr, Marriage, Divorce and Separation (2d ed. 1950) § 1589; 1 Beale, Conflict of Laws, p. 479 (1935). It was fairly obtained from a court presumably having jurisdiction (Herr, supra, § 1590), in a proceeding participated in by both parties. It has been openly relied upon in the past by all concerned, there has been a second marriage and the birth of children, and the lapse of 12 years before the institution of the present proceeding. Due consideration for the interests of the innocent parties suggests, as does the public interest generally, that under these particular circumstances the divorce remain free from the attack sought to be pressed by the plaintiff. See Sleeper v. Sleeper, 129 N.J. Eq. 94, 99 (E. & A. 1941).
On the foregoing grounds I would dismiss the plaintiff's complaint without more and without expression of any views on the other issues discussed in Judge Bigelow's opinion. Such dismissal would leave untouched the Florida decree of divorce, regular on its face, and remove the particular jeopardy which underlay the intervening defendant's claim for a declaration that the Florida decree was valid. Insofar as the main defendant is concerned, he did not seek to question the validity of the Florida divorce and was hardly in any position to do so. Restatement, supra.