14 N.J. Super. 501 (1951)
82 A.2d 465
IRVIN MILLER, PLAINTIFF,
v.
JOHN MILLER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 13, 1951.
*502 Mr. Carl Kisselman (Mr. Barney B. Brown, appearing), attorney for the plaintiff.
Mr. Raymond J. Osborn, attorney for the defendant.
*503 LEONARD, J.C.C. (temporary assignment).
The plaintiff, Irvin Miller, seeks a judgment to quiet title and a declaratory judgment as to four separate premises located in the Borough of Lindenwold, New Jersey.
By deed dated September 13, 1945, said borough conveyed one of said premises to the defendant, John Miller, and Catherine Miller (now deceased), "his wife," and by three separate deeds from three separate vendors, dated August 21, 1931, December 31, 1947, and November 21, 1949, respectively, the three remaining premises were conveyed unto said Catherine Miller.
The said Catherine Miller departed this life intestate on November 24, 1949, a resident of Camden County, leaving surviving her as her only heir-at-law her son, the plaintiff in this cause.
The defendant alleges that he was the common-law husband of said Catherine Miller, deceased. With respect to the first premises he alleges that upon the death of his wife he became the sole owner thereof by reason of a tenancy by the entirety. With respect to the other premises the defendant alleges that as such common-law husband he has an interest therein.
To the contrary, the plaintiff denies defendant was such common-law husband. He alleges that with respect to the first premises he is a tenant in common with the defendant, and with respect to the other three premises he is the sole owner thereof as the sole heir of the deceased, and that the defendant has no interest therein.
The single question to be determined herein is whether or not the defendant, John Miller, was the common-law husband of Catherine Miller, deceased, at the time of her death.
It appears from the evidence that the defendant and the said Catherine Miller, deceased, commenced cohabitation in 1916, and continued such cohabitation until the date of her death. It further appeared from said testimony that at the time they commenced said cohabitation the said Catherine *504 Miller was married to one Frank Henry, and left him for the purpose of commencing this cohabitation.
The uncontradicted evidence disclosed the following: On October 6, 1930, Catherine Miller secured a divorce from Frank Henry, her husband. She immediately returned to the defendant and advised him that this had been accomplished. The defendant at once suggested that they go to a justice of the peace and be married, but she stated it was not necessary, and at that time there was an exchange of conversations in which he said, "I want you as my wife," and she said, "I am your wife and you are my husband." The defendant assented to this and stated, "I am your husband," and he then placed upon her finger a wedding ring, which he had purchased for such specific purpose, and which ring she wore until her death. Ever since that time to the date of her death they lived together as husband and wife, and considered each other their respective spouse. The testimony of the defendant and the seven other additional witnesses, consisting of neighbors and relatives, clearly disclosed that following the divorce and said conversations they continued to cohabit and held themselves out to the world at large as husband and wife.
It is significant that they purchased property in 1945, to wit, the first premises involved herein, in their joint names as husband and wife; they procured life insurance policies designating each other as beneficiary, and describing themselves therein as husband and wife; procured casualty insurance policies on their property, likewise describing themselves therein as husband and wife; borrowed money from a bank in Clementon in their joint names, and deposited money in said bank in a similar style.
It cannot seriously be questioned that when the cohabitation of these parties commenced that both of them knew of the existence of the prior marriage, and that by reason of this impediment their cohabitation was illicit and meretricious in its origin.
*505 "Where it is established by the evidence that a man and woman knew of an existing impediment on the part of the man to effect a valid marriage between them, cohabitation by them is meretricious in its inception, and the illicit relation will be presumed to have continued after the removal of the impediment." In re Franchi, 119 N.J. Eq. 457 (Prerog. 1936), affirmed per curiam, 121 N.J. Eq. 47 (E. & A. 1936).
"It was deemed that cohabitation with habit and repute being accompaniments of the original status could not per se be taken as proof that a new status had been agreed to by the parties." Collins v. Voorhees, 47 N.J. Eq. 555, 557 (E. & A. 1890). "However, that presumption may be overcome by satisfactory proof showing that it was changed to a matrimonial union by mutual consent." In re Franchi, supra.
"When the original purpose was to live in adultery the evidence under similar circumstances must be sufficient to show an abandonment of such purpose and the execution of a new one." Collins v. Voorhees, supra, page 558.
"The presumption that a cohabitation known to the parties to be meretricious in its origin continues to be of that character may be rebutted and proved to have become matrimonial and a lawful common-law marriage established. The change may be established by proof of circumstances excluding the presumption that the original relation continued and showing satisfactorily that it was changed to matrimonial union by mutual consent.
"A cohabitation, meretricious in its origin, becomes matrimonial and a lawful common-law marriage is established when upon being informed of the death of the woman's first husband (which death removed the only impediment to marriage), the man declares to the woman that she is his wife, and thereafter the two, by habit, conduct and declarations, hold themselves out as husband and wife." Schaffer v. Krestovnikow, 89 N.J. Eq. 549 (E. & A. 1918).
"Where both parties were aware of the impediment at the time of the purported marriage, a common-law marriage will *506 not be found in the absence of proof that after the removal of the impediment the parties did in fact enter into a fresh agreement of marriage." Chirelstein v. Chirelstein, 8 N.J. Super. 504, 513 (Ch. Div. 1950); Bellesheim v. Police Pension Fund Comm., 5 N.J. Misc. 430 (Sup. Ct. 1927).
As it was put in Mick v. Mart, 65 A. 851 (Ch. 1907):
"No particular words are necessary to declare or express a change of intention. If from what was said by them it can be gathered that the parties have entered into a contract to live thenceforth as husband and wife, and to abandon the old relation and substitute therefor a matrimonial status, it will be sufficient."
The evidence, which as I have heretofore mentioned, was uncontradicted and unrebutted, clearly proves when the decedent secured her divorce from her husband in 1930 and advised the defendant thereof, that there as a change in intention between these parties and a desire on their part to abandon the old relation and substitute therefor a matrimonial status. The exchange of the words in the present between them as to their being husband and wife, the placing of the marriage ring upon her finger, which she continuously wore thereafter, succinctly proved such intention. Having found that they had the capacity to marry, they immediately changed their status and maintained the new one from thenceforth. Their cohabitation, their respective holding out of each other as a spouse, their conduct toward each other in the purchasing of property in their joint names, the procuring of insurance, the making of loans and of bank deposits, their reputation as husband and wife, all clearly establish this fact.
The plaintiff, the son of the deceased, except to cross-examine the defendant's witnesses, offered no proof to contradict or rebut the defendant's evidence. It is likewise significant that in 1937 the plaintiff caused his name to be changed to "Miller," thus legally assuming the name of the man whom he now seeks to discredit. This took place after 1930, the year in which the defendant and the decedent took one another as husband and wife following her divorce from her *507 first husband. This very act on the part of the plaintiff certainly supports and lends credence to the defendant's testimony, and supports the proof that these two respective parties treated each other as husband and wife, and bore such a reputation. To maintain plaintiff's present position would be to assume that he took the name of a man who was his mother's paramour and with whom she was living in an illicit relationship. It is my considered judgment that the plaintiff would not ordinarily follow such a course of conduct.
I find as a fact from the uncontradicted evidence adduced in this case, which evidence I consider to be clear, consistent and convincing, that immediately subsequent to the divorce obtained by Catherine Miller from her first husband that the original illicit relationship was changed, and that said Catherine Miller and the defendant did enter into a fresh agreement of marriage. I, therefore, conclude that there has been established a common-law marriage as of that time, to wit, October, 1930, and that said common-law marriage continued to the date of the decedent's death. The presumption of the continuance of the original illicit relationship has been overcome by satisfactory proof.
I, therefore, find as a fact that the defendant, John Miller, was the common-law husband of the decedent, Catherine Miller, as of the time of her death. Insofar as the first premises is concerned, he is the sole owner thereof, and insofar as the other three premises are concerned, as her husband he has an interest therein.
I will enter an order in accordance with these conclusions.